plaintiff does not even allege that in the case at hand the avenues for prompt judicial review were somehow inadequate. Access to the federal courts in this case was immediate, and a decision was rendered promptly (the ordinance was enacted on August 11, 1998, and after a hearing on October 1, 1998, the District Court for the Western District of Kentucky entered a final order granting in part and denying in part plaintiff's motion for a preliminary injunction on October 29, 1998). In addition, the spirit of the Freedman test, that undue suppression of constitutionally protected speech be avoided, is satisfied on these facts because, as the District Court pointed out in this case, the plaintiff may be granted a temporary restraining order or injunction under the Kentucky procedural rules after it initiates the judicial action. For these reasons, I believe that we should not invalidate on its face the section of the City of Paducah ordinance which explicitly states that it allows prompt judicial review in any court of competent jurisdiction for its failure to provide prompt judicial review.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0041P (6th Cir.)
File Name:  00a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT



NIGHTCLUBS, INC.,
       *Plaintiff-Appellant,*

       *v.*                                    No. 98-6581

CITY OF PADUCAH, et al.,
       *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 98-00241—Thomas B. Russell, District Judge.

Argued:  September 22, 1999

Decided and Filed:  February 2, 2000

Before:  MERRITT and CLAY, Circuit Judges;
       ALDRICH,[*]  District Judge.

---

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**COUNSEL**

---

**ARGUED:** Charlotte B. Scott, BRADLEY, BRYANT & KAUTZ, Paducah, Kentucky, for Appellant. David L. Kelly, DENTON & KEULER, Paducah, Kentucky, for Appellees. **ON BRIEF:** Charlotte B. Scott, William E. Scent, BRADLEY, BRYANT & KAUTZ, Paducah, Kentucky, for Appellant. David L. Kelly, DENTON & KEULER, Paducah, Kentucky, for Appellees.

ALDRICH, D. J., delivered the opinion of the court, in which CLAY, J., joined. MERRITT, J. (pp. 19-24), delivered a separate dissenting opinion.

---

**OPINION**

---

ALDRICH, District Judge. Plaintiff-Appellant Nightclubs, Inc. ("Nightclubs") brought this action against the City of Paducah, Kentucky; the City Commission of the City of Paducah, Kentucky; Albert Jones, in his official capacity as the Mayor of Paducah, Kentucky; and James Zumwalt, in his official capacity as the City Manager of Paducah, Kentucky (collectively "the City" or "Paducah"). Pursuant to 42 U.S.C. § 1983, Nightclubs challenges the constitutionality of a Paducah ordinance that provides for the licensing and regulation of sexually oriented businesses and their employees. The District Court denied Nightclubs' motion for a preliminary injunction in substantial part. Nightclubs appeals that denial, arguing that the ordinance's licensing scheme amounts to an unlawful prior restraint in violation of the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and § 1292(a)(1). Because the District Court erred in not enjoining the licensing scheme, we REVERSE, VACATE, and REMAND.

must examine the swiftness of a state court's procedures, regardless of the language in the ordinance itself, before deciding whether a prompt judicial determination on the merits of the action could potentially be reached. I do not believe that to be the intention of the Court in *FW/PBS*.

The broad language of *FW/PBS* holds only that "the possibility of prompt judicial review" or "an avenue for prompt judicial review" is required. *See FW/PBS*, 493 U.S. at 228-29. While some language in Justice Brennan's concurring opinion indicating that a "prompt judicial determination" might be required has caused discussion among the Circuit courts, several Circuits have agreed that "prompt judicial review" only means access to prompt judicial review. *See, e.g., Boss Capital, Inc. v. City of Casselberry*, 187 F.3d 1251 (11th Cir. 1999); *TK's Video, Inc. v. Denton County*, 24 F.3d 705 (5th Cir. 1994); *Graff v. City of Chicago*, 9 F.3d 1309 (7th Cir. 1993) (en banc); *Jews for Jesus, Inc. v. Mass. Bay Transp. Auth.*, 984 F.2d 1319 (1st Cir. 1993). In addition, the Second Circuit has intimated that it would follow this line of reasoning. *See, Beal v. Stern*, 184 F.3d 117 (2d Cir. 1999) (noting, without deciding, that prompt access to judicial review in state courts would satisfy the Freedman test). I do not believe the Court intended for a prompt judicial determination to be required in a situation where the city has provided for the broadest type of judicial review within its powers. To find otherwise is to invalidate broadly-worded city ordinances on the basis of the swiftness or slowness of that particular state's judicial procedures, a test that could force Circuits to come to seemingly arbitrary and inconsistent decisions based on the various procedures of the different state court systems within their reach. For these reasons, I do not believe *FW/PBS* requires the result the Court reaches here.

Even if a prompt judicial determination is required, the plaintiff in this case does not meet the burden of proving that it could not gain such a prompt judicial determination in some court of competent jurisdiction over the matter. In fact, the

meaning of § 11-7(a), nor given it a sensible meaning that would uphold its validity.

*    *    *

The Court's opinion also erroneously concludes that the City of Paducah ordinance fails to provide for "prompt judicial review" as required by *FW/PBS, Inc. v. City of Dallas* and our own Sixth Circuit precedent.

Nightclubs, Inc. bears the burden of proving to the court that the ordinance does not provide an avenue for prompt judicial review. *See FW/PBS*, 493 U.S. at 229-30 (explicitly declining to shift the burden of proof to the government in licensing scheme cases). The plaintiff has failed to meet that burden. Specifically, the plaintiff has failed to address the fact that this ordinance provides for prompt judicial review in any court of competent jurisdiction, including federal courts. The Court argues that the Kentucky procedures at issue provide for even more potential delay than do the Tennessee procedures this court found to require undue delay in *East Brook Books, Inc. v. City of Memphis*, 48 F.3d 220 (6th Cir. 1995). But the ordinance in that case, unlike the ordinance before us today, provided for appeal from an adverse decision by common law writ of certiorari to the state courts of Tennessee. *See id.* at 225. Where judicial review is limited in that manner, certainly a facial challenge that the limiting language precludes "prompt judicial review" has more of a chance of success. But how can an ordinance which allows judicial review "in any court of competent jurisdiction," and further urges that the matter be "promptly reviewed" by the courts be declared to be facially invalid for not providing an avenue for prompt judicial review? Certainly *East Brooks Books* is distinguishable on that basis.

The Court relies on *FW/PBS* for the proposition that "prompt judicial review" requires more than access, without interference, to the judicial system. Instead, the Court essentially argues that in each case before it a federal court

## I.

Nightclubs, Inc., doing business as "Regina's House of Dolls," is a Kentucky corporation that owns and operates an adult entertainment business featuring performances by female dancers. The business has been operating continuously in Paducah, Kentucky since 1987. On August 11, 1998, the City of Paducah enacted Ordinance No. 98-8-5925 ("the ordinance"), which is designed to regulate sexually oriented businesses. Regina's House of Dolls qualifies as an "adult cabaret" under § 11-2(3) of the ordinance.[1]

In addition to regulating the substantive operation of sexually oriented businesses, the ordinance requires such businesses to obtain licenses from the City prior to operation. *See* Ord. § 11-6(a). The ordinance also requires individuals who work as managers and entertainers in sexually oriented businesses to obtain employee licenses from the City. *See id.* Section 11-6 delineates the licensing application procedures. *See* Ord. §§ 11-6(b)-(g). An applicant for a sexually oriented business license must submit various pieces of information to the City, including a complete set of fingerprints "on forms as prescribed by the Chief of Police," his or her social security number and/or tax identification number, and a description of "the nature of the activity or activities to be engaged in at the establishment." Ord. § 11-6(e). The applicant must also disclose certain details regarding any crime(s) that he or she has been convicted of "relating to prostitution, solicitation, or sexual offenses" within the three years prior to the date of the application. Ord. § 11-6(e)(3). Section 11-6(e)(11) states that

---

[1] The ordinance defines "adult cabaret" as "a night club, bar, restaurant, or similar commercial establishment which regularly features: (a) Persons who appear in a state of nudity or semi-nude; or (b) Live performance [sic] which are characterized by the exposure of 'specified anatomical areas' or by 'specified sexual activities'; or (c) Films, motion pictures, video cassettes, slides or other photographic reproductions which are characterized by the depiction or description of 'specified sexual activities' or 'specified anatomical areas'." *See* Ord. § 11-2(3).

the applicant must already possess a current "City business license," and that "the premises must be inspected and found to be in compliance with health, fire, zoning, plumbing and building codes of the City."  Ord. § 11-6(e)(11).

Section 11-7(a) provides as follows:

Upon receipt of an application properly filed with the Director and upon payment of the non-refundable application fee, the Director or his/her designee shall immediately stamp the application as received and shall immediately thereafter initiate an investigation of the application and the proposed sexually oriented business by all appropriate City departments and agencies.  The City shall approve or deny the issuance of a license to an applicant within ten (10) business days after receipt of a completed sexually oriented business application.

Ord. § 11-7(a).    Thus, once an applicant submits a "completed" business license application in accordance with § 11-6, the City Manager must immediately instruct various[2] City departments to conduct the appropriate investigations. Section 11-7(a) further declares that the City "shall approve" the issuance of a sexually oriented business license "unless" the City determines that the application is deficient in one of eight specified ways.  *Id.*  That is, Paducah will deny a business license if the applicant is overdue on any payments to the City, has failed to provide requisite information on the application, has failed to pay the license fee, or otherwise "has failed to comply with any provision or requirement of this ordinance."  *Id.*  A business license will also be denied if the premises to be used for the sexually oriented business is not in compliance with zoning requirements or with applicable

---

[2]Although the ordinance continuously refers to "the Director" of the City, the ordinance defines the Director as "the City Manager or his/her designee."  As the City Manager is a defendant in this action, the Court will refer to this individual as "the City Manager" rather than "the Director."

the face of the ordinance was "more than remedied by the city's narrowing construction."  *Id.*

*Rock Against Racism* is not the only example of the federal courts' reluctance to strike an ordinance, even on a First Amendment facial challenge, unless absolutely necessary. When the Supreme Court first announced its intention to allow First Amendment facial challenges, it tempered that decision by noting that "we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601,  615 (1973).  This language in *Broadrick* was quoted by the Court when it held that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds."  *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (finding that an ordinance could not be challenged facially when there was no proof that it would be applied any differently to others than it had been applied to plaintiffs). There is no realistic danger that this ordinance will compromise First Amendment rights of third parties when the enforcing organization, the City of Paducah, has agreed to interpret the statute in a way that comports with the First Amendment.

When we analyze the mandatory language of the ordinance itself and take into account the City's own interpretation of its duties under the ordinance, I agree with the District Court that there is no problem here with delay.  Our Court has gone out of its way to give the ordinance an unreasonable interpretation.  Instead of emasculating the ordinance in order to hold it invalid, it is our responsibility to give the law a "rational and sensible construction" that will uphold its validity. *American Tobacco Co. v. Patterson*, 456 U.S. 63 (1982).    *See* SUTHERLAND, STATUTORY CONSTRUCTION §§ 45.11—45.12 (5th ed. 1992).    Our Court has not interpreted the ordinance in accordance with the plain

Court noted in *FW/PBS*, "[a]lthough facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decision maker and where the regulation is challenged as overbroad." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223 (1990) (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 and n.15 (1984)).

But that is not the end of the matter. It is the policy of the federal courts, even in the First Amendment context, to consider any limiting constructions which the government places on its own regulations. Even if the ordinance were not pluperfectly clear on its face that the City has only 10 days, the City has stated that its interpretation of the ordinance is that the City has 10 days within which to complete the inspections necessary for the issuance of a license--precisely the construction which Nightclubs, Inc. concedes completely satisfies the definite and specific time limits requirement of *FW/PBS*.

In a similar situation a few years ago, the Supreme Court was faced with a facial invalidity challenge on First Amendment grounds in conjunction with a concession by the government enforcement agency (in that case, the City of New York) that they would interpret the ordinance in a way which would cure the ordinance of its defects. The Court noted that "the city has interpreted the guideline in such a manner as to provide additional guidance to the officials charged with its enforcement." *Ward v. Rock Against Racism*, 491 U.S. 781, 795 (1989). The Court then found that "[a]dministrative interpretation and implementation of a regulation are, of course, highly relevant to our analysis, for '[i]n evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered.'" *Id.* at 795-96 (quoting *Hoffman Estates v. The Flipside, Inc.*, 455 U.S. 489, 494 (1982)). Finally, the Court concluded that any defect on

health, fire, building, and plumbing codes. *Id.* Licenses are to be renewed annually under these same procedures. *See* Ord. §§ 11-10(a)-(b).

Sections 11-15 and 11-17 govern appeals from the denial, suspension, or revocation of licenses. Section 11-15 provides that an aggrieved applicant may appeal the denial of a license to the Board of Commissioners ("the Board") within ten days of receiving notice that his or her application was denied. *See* Ord. § 11-15(b). The Board must hold a hearing on the appeal within ten days of the filing of the notice of appeal. *Id.* The applicant may be represented by counsel, present evidence, and cross-examine witnesses at the hearing; the City Manager has the burden to prove that denial of the license was appropriate. *See* Ord. § 11-15(c). The Board must render a decision in writing within five days of hearing the appeal. *See* Ord. § 11-15(d). If the Board chooses to remand the matter to the City Manager "for further review and action," the City Manager must complete further review within ten days of the remand. *Id.* Section 11-15(e) states, "The applicant shall have the right to seek prompt judicial review of the Board of Commissioners' decision in any court of competent jurisdiction as provided by law. The action shall be promptly reviewed by the court." Ord. § 11-15(e). Section 11-17 prescribes almost identical appeal rights for a license holder seeking an appeal of the suspension or revocation of a license. *See* Ord. § 11-17(a)-(f).

Soon after the Paducah ordinance went into effect, Nightclubs filed this action, challenging the constitutionality of the ordinance both on its face and as applied.[3] After conducting a hearing on the plaintiff's motion for a preliminary injunction, the District Court enjoined only those sections of the ordinance pertaining to the high cost of licensing fees and the requirement that landowners submit

_____

[3] Adult World, a store that sells books, magazines, and films, filed a companion case, but that case is not before us on appeal.

notarized acknowledgments along with license applications. *See* Ord. §§ 11-6(e)(13), 11-9(a)-(d).[4]   The District Court declined to enjoin the remaining operational and licensing provisions of the ordinance. Nightclubs appeals that denial with respect to the licensing scheme, arguing that on its face, the scheme is an unconstitutional prior restraint upon one's freedom of expression.

## II.

In deciding whether to grant a preliminary injunction, a district court must consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 1496 (1999). This Court reviews the grant or denial of a preliminary injunction for an abuse of discretion. *Id.* "'The district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.'" *Id.* (quoting *Blue Cross & Blue Shield Mutual of Ohio v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)). In cases involving the First Amendment, the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the

---

[4]Section 11-6(e)(13) requires a business license applicant to submit a notarized statement from the landowner of record "acknowledging that a sexually oriented business establishment is permitted to be located on the real property." Ord. § 11-6(e)(13). The District Court found this provision burdensome because the landowner is not legally obligated to give such a statement, and concluded that the City had failed to show how this requirement furthers a substantial government interest. The District Court enjoined § 11-9, which deals with application and annual license fees, because Paducah had failed to justify the high cost of the fees. The City did not cross-appeal the District Court's decision on these issues.

---

## DISSENT

---

MERRITT, Circuit Judge, dissenting. This appeal is a First Amendment facial challenge to Paducah's ordinance regulating the issuance of licenses for sexually-oriented businesses, including nude dancing night clubs like plaintiff's. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) is controlling. In that case, the Supreme Court set out two requirements for such licensing schemes: The scheme must provide for definite and specific time limits within which a license is to be granted or denied, and an avenue for prompt judicial review must be established. The Paducah ordinance satisfies both requirements.

\*       \*       \*

The ordinance itself is clear enough on its face. Section 11-79(a) requires an "immediate" investigation "upon receipt of an application," and "the City shall approve or deny the issuance of a license to an applicant within ten (10) business days." The ordinance on its face requires Paducah's various administrative investigations and its final decision to take place "within ten (10) business days." So I do not see any problem on the issue of delay. Even if there were some ambiguity, the City has conceded that it must finish its work and issue a decision within the 10-day period. If the City delays beyond that time, the plaintiff would be entitled immediately to an injunction.

In addition, the Court's opinion proceeds under the incorrect assumption that challenging this city ordinance on its face is the appropriate course of action under the circumstances. It is true that our First Amendment case law has long allowed facial challenges to regulations implicating First Amendment rights, even in situations where facial challenges would otherwise be deemed inappropriate. As the

Paducah's ordinance lacks such an assurance, it is unconstitutional.

## IV.

We hold that the City's licensing scheme, on its face, violates the First Amendment because it fails to provide that the City will make a licensing decision within a brief specified time period, that the status quo will be maintained during this period and during judicial review, and that a prompt judicial determination will be available. Accordingly, we conclude that the District Court erred in denying the plaintiff's request to preliminarily enjoin the licensing scheme, and we REVERSE and VACATE the District Court's order in this regard. We also REMAND the case for a determination of whether the licensing scheme is severable from the remainder of the ordinance, and for further proceedings consistent with this opinion.

merits. *Id.* This is so because, as in this case, the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute. *Id.*

## III.

The sole issue raised on appeal is whether Paducah's licensing scheme, on its face, contains adequate procedural safeguards as required by the First Amendment. We conclude that it does not.

As an initial matter, we note that Nightclubs has standing to bring a facial attack against the City's licensing scheme. "In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license." *Freedman v. Maryland*, 380 U.S. 51, 56 (1965). A form of unbridled discretion is the failure to place brief, specific time limits on the decision-making process. *See id.* at 57; *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 224, *reh'g denied* (6th Cir.), *cert. denied*, 516 U.S. 909 (1995). The rationale for permitting a facial challenge is that when a licensing scheme allegedly contains a risk of delay, "'every application of the statute create[s] an impermissible risk of suppression of ideas.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223-24 (1990) (plurality op.) (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 n.15 (1984)) (brackets in original). Because Nightclubs claims that Paducah's licensing scheme creates an impermissible risk of delay and lacks constitutionally-required safeguards, Nightclubs has standing to challenge the ordinance on its face.[5]

---

[5] Paducah does not dispute that the plaintiff engages in activity protected by the First Amendment. *See, e.g.*, *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991) (erotic dancing constitutes expressive

A "prior restraint" exists when speech is conditioned upon the prior approval of public officials. *See*, *e.g.*, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975) (denial of use of public forum without procedural safeguards is unconstitutional prior restraint). Although prior restraints "are not unconstitutional per se," they come to court bearing a heavy presumption against their validity. *Id.* at 558 (citations omitted). Prior restraints are presumptively invalid because they typically involve "two evils that will not be tolerated": (1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) "the risk of indefinitely suppressing permissible speech" when a licensing law fails to provide for the prompt issuance of a license. *FW/PBS*, 493 U.S. at 225-27.

In *Freedman*, the Supreme Court invalidated a Maryland film censorship statute under the First Amendment because the statute lacked necessary procedural safeguards. *Freedman*, 380 U.S. at 59-60. The Court held that three procedural safeguards are required to avoid constitutional infirmity. *Id.* at 58-59. First, the decision whether to issue a license must be made within a "specified brief period," and, if judicial review is sought, the status quo must be preserved pending "a final judicial determination on the merits." *Id.* at 59. Second, the scheme "must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." *Id.* Third, a censorship scheme must place the burden of instituting judicial proceedings and proving that expression is unprotected on the censor rather than the exhibitor. *Id.* at 58. The holding of *Freedman* has been reaffirmed and applied in

---

activity "within the outer perimeters of the First Amendment"). Nonetheless, the dissent posits that a facial challenge is not "the appropriate course of action" in this case because, in effect, the City's attorney promised at oral argument that the City would apply the ordinance in a constitutional manner. However, there is no evidence in the record to support the limiting construction that the dissent is so eager to read into the ordinance.

rendered affirming a denial of a special permit"). For example, an ordinance could provide that a license shall issue if a reviewing court fails to reach a decision within a reasonably brief period of time. Similarly, a city could also issue provisional licenses to those businesses and employees who choose to seek judicial review of license denials. As discussed previously, the Paducah ordinance fails to even maintain the status quo, let alone consider the practicalities involved with the necessity of prompt judicial review.

There are other measures that a city may institute to help ensure that judicial review will be expeditious. An ordinance may provide that an administrative transcript must be submitted to a court within a brief, specified period of time. Cities may also petition their state legislatures to pass laws that would obligate state courts to resolve municipal administrative appeals within a reasonably short period of time. While these measures may seem burdensome on first blush, they are reasonable in light of the great importance this nation attaches to the freedom of expression.[11] It is precisely because of this importance that prior restraints upon speech are strongly disfavored and presumptively invalid in the first place. As courts long have recognized, the procedural safeguards outlined in *Freedman*, *FW/PBS*, and their progeny are necessary to prevent licensing-scheme prior restraints from being used as instruments for the suppression of expression.

In sum, a system of prior restraint that fails to ensure a reasonably prompt decision by a judicial officer cannot be squared with the First Amendment. *See Baby Tam*, 154 F.3d at 1101-02; *East Brooks Books*, 48 F.3d at 225. Because

---

[11] It is worth noting that cities have other ways to regulate the secondary effects of sexually-oriented businesses besides imposing licensing schemes upon them. The Paducah ordinance itself includes a number of substantive regulations, such as a requirement that performers remain six feet away from patrons. Zoning requirements are another common way of regulating sexually-oriented businesses.

The phrase 'judicial review' compels this conclusion. The phrase necessarily has two elements--(1) consideration of a dispute by a judicial officer, and (2) a decision. Without consideration, there is no review; without a decision, the most exhaustive review is worthless. In baseball terms it would be like throwing a pitch and not getting a call. As legendary major league umpire Bill Klem once said to an inquisitive catcher: 'It ain't nothin' till I call it.' This is also true of judicial review. Until the judicial officer makes the call, it ain't nothin'.

*Baby Tam*, 154 F.3d at 1101-02.

Quite obviously, a municipality has no authority to control the period of time in which a state court will adjudicate a matter.[10] Indeed, a city does not even possess the authority to create a mere "avenue" for prompt judicial review; the availability of judicial review is, in effect, dependent upon state law. We recognize that, as a practical matter, the requirement of prompt judicial review means that a city seeking to impose a licensing scheme must take certain steps to avoid constitutional infirmities. Specifically, a city may very well have to go beyond merely maintaining the status quo and actually permit the communication of protected expression until a judicial decision is rendered on a matter. *See 11126 Baltimore*, 58 F.3d at 1001 n.18 (county could entirely avoid constitutional problem "by permitting adult bookstores to operate until a judicial determination is

---

[10]Only a state legislature has the power to pass legislation requiring state courts to resolve certain types of cases within a particular period of time. For example, legislatures have mandated statutorily that, to ensure one's right to a speedy trial, courts must conduct criminal trials within a certain amount of time. *See, e.g.*, K.R.S. § 421.510 (when defendant is charged with sexual abuse of a person under 16 years of age, defendant must be tried within 90 days of hearing); K.R.S. § 500.110 (Kentucky court must try prisoner facing indictment on additional charges within 180 days of prisoner's request); Ky. RCr. 9.02 (trials of all criminal defendants in Kentucky shall be held as promptly as possible).

a long line of prior restraint cases. *See, e.g., Riley v. National Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 802 (1988) (invalidating state licensing requirement for fundraisers that permitted indefinite delays); *Southeastern Promotions*, 420 U.S. at 560 (reaffirming *Freedman* requirements and striking down system regulating use of public forum); *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 374 (1971) (applying *Freedman* requirements to forfeiture proceedings for obscene materials).

In *FW/PBS*, the Supreme Court applied *Freedman* to a Dallas, Texas ordinance similar to the Paducah ordinance at issue here. The Dallas ordinance required sexually oriented businesses to pass municipal inspections in order to obtain mandatory licenses. *FW/PBS*, 493 U.S. at 227. In a plurality opinion, Justice O'Connor, joined by Justices Stevens and Kennedy, held that two of the three *Freedman* safeguards "are essential" to prevent a licensing scheme from causing undue delay in the issuance of a license: "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied." *Id.* at 228. The plurality concluded that the third *Freedman* requirement--that the censor bear the burden of going to court and proving the unprotected nature of the speech--is inapplicable when a system of prior restraint does not require a public official to pass judgment on the content of any speech. *Id.* at 229-30. In a concurring opinion, Justice Brennan, joined by Justices Marshall and Blackmun, expressed the belief that all three of the procedural safeguards outlined in *Freedman* must be applied to any system of prior restraint. *Id.* at 239 (Brennan, J., concurring).

Although the status of the third *Freedman* requirement remains unclear in the licensing context, this Circuit has previously noted that, under *FW/PBS*, at least the first two *Freedman* safeguards are essential for a licensing scheme to comport with the First Amendment. *See East Brooks Books*,

48 F.3d at 224 (invalidating Memphis, Tennessee sexually oriented business ordinance that failed to ensure prompt judicial review). Thus, a licensing scheme must remove standardless discretion from government officials and contain two procedural safeguards: (1) the decision whether to issue a license must be made within a specified brief period, and the status quo must be maintained during that period and during judicial review, and (2) there must be a "guarantee of prompt judicial review." *Id.* at 225.

Nightclubs argues that Paducah's ordinance lacks both of these mandatory safeguards. We agree. First, on its face, the ordinance fails to ensure that the City will decide whether to issue a license within a brief specified time period during which the status quo is maintained. Although the ordinance states that Paducah will approve or deny an application within ten days, the ordinance also states that no license will issue unless the City executes, and the premises passes, a variety of building inspections. *See* Ord. § 11-7(a). No specific time limits for completion of these inspections are placed on the "appropriate City departments and agencies." *Id.* Further, the ordinance does not indicate that a license shall issue if any of the City departments fails to complete a mandatory inspection within a timely period.[6] In this regard, the Paducah ordinance

---

[6]At oral argument, defendants' counsel "conceded" that the ordinance requires the City to issue a license within ten days even if the City fails to complete the necessary inspections. The dissenting opinion interprets this "concession" as a limiting construction that binds this Court. Both the City and the dissent fail to recognize that any limiting construction must "be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988) (ordinance vesting unbridled discretion in city official is unconstitutional on its face). First Amendment rights would rest on a very thin reed indeed if the promises of a city attorney at oral argument were alone sufficient to authoritatively limit the meaning of an ordinance. The record in this case is devoid of any evidence that a state court has construed the Paducah ordinance or that "a well-understood and uniformly applied practice has developed that has virtually the force of a judicial

---

*Freedman*'s requirement of "a prompt final judicial decision." *Freedman*, 380 U.S. at 59. *See Baby Tam*, 154 F.3d at 1102 ("plurality took issue only with *Freedman*'s requirement that the censor bear the cost of going to court obtain judicial review; otherwise, *FW/PBS* offered nothing different from *Freedman*'s concept of what 'judicial review' meant"); *11126 Baltimore*, 58 F.3d at 1000 ("Justice O'Connor's decision in *FW/PBS* cannot properly be read to relax the *Freedman* prompt judicial review requirement"). Justice O'Connor described the first two *Freedman* requirements as "essential"; she gave no indication that she was modifying the second requirement of prompt judicial review. *See FW/PBS*, 493 U.S. at 228-29. Although she spoke of "the possibility of" and "an avenue for" prompt judicial review, *see id.*, Justice O'Connor in no way altered what "judicial review" clearly means under *Freedman* and its progeny: "a final judicial determination on the merits."[9] *Freedman*, 380 U.S. at 59.

Indeed, if mere access to a judicial forum were sufficient, then the second *Freedman* safeguard would be rendered virtually meaningless. *See Baby Tam*, 154 F.3d at 1101. Justice O'Connor observed in *FW/PBS* that "the core policy underlying *Freedman* is that the license for a First Amendment-protected business must be issued within a reasonable period of time," and that the first two *Freedman* safeguards work together to ensure that the *entire* review process will be expeditious. *FW/PBS*, 493 U.S. at 228. As the Ninth Circuit pointed out in *Baby Tam*,

---

[9]Even if Justice O'Connor's plurality opinion could be read as reducing the prompt judicial review requirement, it was joined by only two other justices, and, therefore, could not have overruled *Freedman*. Further, there is no doubt that in *FW/PBS*, Justice Brennan, along with the two justices joining his concurring opinion, unequivocally maintained that all three *Freedman* requirements should apply, including the requirement of "a prompt judicial *determination*." *FW/PBS*, 493 U.S. at 239 (Brennan, J., concurring) (emphasis added).

Moreover, this Circuit and a number of other circuits have held that a licensing scheme must reasonably ensure a prompt judicial determination, and not mere access to judicial review. *See Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097, 1101 (9th Cir. 1998) ("'prompt judicial review' means the opportunity for a prompt hearing and a prompt decision by a judicial officer"); *11126 Baltimore Blvd., Inc. v. Prince George's County, Maryland*, 58 F.3d 988, 1000-01 (4th Cir.) (en banc), *cert. denied*, 516 U.S. 1010 (1995) (under *FW/PBS* and its progeny, prompt judicial determination is required); *East Brooks Books*, 48 F.3d at 225 (prompt judicial adjudication required). Although the First, Fifth, and Eleventh Circuits have concluded that "for licensing ordinances, prompt judicial review only means access to prompt judicial review," *Boss Capital, Inc. v. City of Casselberry*, 1999 WL 688046, slip op. at \*4 (11th Cir. Sept. 3, 1999),[8] this Court remains persuaded that Supreme Court precedent requires a sufficiently prompt determination on the merits.

Like the Fourth and Ninth Circuits, we do not read Justice O'Connor's plurality opinion in *FW/PBS* as relaxing

---

as a dispute over whether the applicant falsely answered a question on the application. *See* Ord. §§ 11-7(a)(3), 11-8(2). Because any denial of a license would necessarily implicate the First Amendment, a licensing scheme must, on its face, ensure that all aggrieved applicants will be granted a prompt review--even those employees and business owners who do not have the wherewithal to launch costly constitutional attacks against the ordinance.

[8] The Eleventh Circuit recently held in *Boss Capital*, as the First and Fifth Circuits previously have held, that the mere availability of a judicial forum may satisfy the prompt judicial review requirement. *See Boss Capital*, 1999 WL 688046, slip op. at \*5; *TK's Video, Inc. v. Denton County, Texas*, 24 F.3d 705, 709 (5th Cir. 1994); *Jews for Jesus, Inc. v. Massachusetts Bay Transp. Auth.*, 984 F.2d 1319, 1327 (1st Cir. 1993). When the Seventh Circuit was presented with the question, an en banc panel of that court sharply split on the issue. *See Graff v. City of Chicago*, 9 F.3d 1309 (7th Cir. 1993), *cert. denied*, 511 U.S. 1085 (1994).

---

is indistinguishable from the Dallas ordinance struck down in *FW/PBS*. *See FW/PBS*, 493 U.S. at 227 (although ordinance stated license would issue within 30 days of application, ordinance did not "set a time limit within which the [necessary] inspections must occur"). Moreover, § 11-6(e) delineates the information that comprises a "completed" business license application. *See* Ord. § 11-6(e). The eleventh item in this list is that the applicant "must have a current City business license, and the premises must be inspected and found to be in compliance with health, fire, zoning, plumbing and building codes." Ord. § 11-6(e)(11). Thus, § 11-6(e)(11) seems to require these inspections to be completed *before* the ten-day investigatory period in § 11-7(a) will be triggered. The ordinance does not explain how inspections can be conducted prior to submission of a completed license application, and such a requirement is plagued with the risk of indefinite delays. Even if § 11-6(e)(11) can be read to merely foreshadow the City's responsibilities under § 11-7(a), these sections fail to ensure that a license will be issued within a brief specified time period for the reasons discussed above.

Furthermore, the ordinance fails to preserve the status quo either during the administrative process for license renewals or pending judicial review of decisions to suspend, revoke, or not renew licenses. If Paducah chooses not to renew a sexually oriented business license, that business must cease

---

construction." *Id.* at n.11. For that reason, the dissent's reliance on *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), is totally misplaced. In *Rock Against Racism*, which was not a prior restraint case, but, rather, a case involving a time, place, or manner regulation, the District Court had "expressly found" that the city engaged in policies and practices that limited the discretion of public officials. *Id.* at 795. There is no such finding in this case. We can neither presume that municipal officials will act in good faith and respect a speaker's First Amendment rights, nor read a requirement into an ordinance that is not fairly and evidently present. *See City of Lakewood*, 486 U.S. at 770, n.11; *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998).

operation immediately. The previous license does not remain in effect while an appeal proceeds before the Board or, later, while an action is pending in court. *See* Ord. §§ 11-10, 11-15. In addition, if the City suspends or revokes a license for one of the reasons provided in § 11-16, that decision will be stayed while an appeal proceeds before the Board, but it will not be stayed pending judicial review. *See* Ord. § 11-17(b), 11-17(f). Accordingly, the ordinance fails to maintain the status quo pending review as the First Amendment requires. *See Freedman*, 380 U.S. at 59 ("[a]ny restraint imposed in advance of a final judicial determination on the merits must . . . be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution").

The second *Freedman* safeguard--the guarantee of prompt judicial review--is also lacking in this case. The ordinance provides that an applicant, or licensee whose license has been suspended or revoked, may seek a review of the Board's decision "in any court of competent jurisdiction." Ord. §§ 11-15(e), 11-17(f). Although Kentucky law does not provide for judicial appeals from administrative decisions, an aggrieved applicant or licensee may file "an original action" in Kentucky court. *See* K.R.S. § 23A.010(4) (review of administrative decision constitutes not appeal, but original action). The case then proceeds according to standard court rules, with the state court conducting a "limited trial de novo, including review of the record of the board and other evidence." *City of Covington v. Tranter*, 673 S.W.2d 744, 748 (Ky. Ct. App. 1984). The person seeking review of the administrative decision generally bears the burden of furnishing the transcript to the state court. *Id.* Kentucky law does not in any way limit the time for furnishing transcripts, conducting a court hearing, or rendering a judicial decision.

This procedure for judicial review contains an even greater potential for indefinite delays than the Memphis scheme this Court found unconstitutional in *East Brooks Books*. *See East Brooks Books*, 48 F.3d at 225. In that case, Tennessee law expressly authorized judicial review of administrative

decisions, but no time limits were placed on the city's obligation to provide an administrative transcript. *Id.* Moreover, although the appeal would have had "precedence over other litigation," there was no assurance that the Tennessee court would have resolved the appeal in a timely manner. *Id.* We noted that under Supreme Court case law, judicial review processes with "potential delays of over five months are impermissible." *Id.* (discussing *Southeastern Promotions*, 420 U.S. at 562, and *Thirty-Seven Photographs*, 402 U.S. at 373-74). Kentucky law fails to guarantee judicial review of Paducah's licensing decisions within any particular period of time, let alone within five months.

The defendants argue, and the District Court concluded, that the requirement of prompt judicial review is satisfied because an aggrieved applicant or licensee may seek preliminary injunctive relief soon after filing an original action in Kentucky court. This argument both misinterprets a long line of legal precedent in the area of prior restraints and minimizes the importance of the First Amendment freedoms at stake. As previously discussed, *Freedman*, *FW/PBS*, and *East Brooks Books* require an assurance of prompt judicial review; a theoretical possibility of expeditious judicial review is not constitutionally sufficient. A guarantee of prompt judicial review is necessary "because undue delay results in the unconstitutional suppression of protected speech." *FW/PBS*, 493 U.S. at 228. If an applicant challenges the Board's decision to uphold the denial of a license, there is nothing in Kentucky law requiring the state court to swiftly schedule a hearing on a motion for injunctive relief. While we trust state courts to exercise due diligence, we cannot be sure that a state judge, who often is elected and toiling under a busy docket, will conduct a hearing and render a decision in a prompt manner.[7]

---

[7]The District Court not only assumed that the state court would speedily issue injunctive relief, but also assumed that a judicial appeal would be brought on First Amendment grounds. There could, of course, be non-constitutional reasons for challenging the denial of a license, such