Greyson CURRENCE, Plaintiff–
Appellant–Cross–Appellee,

v.

CITY OF CINCINNATI, Defendant–
Appellee–Cross–Appellant.

Nos. 00–3985, 00–4041.

United States Court of Appeals,
Sixth Circuit.

Jan. 24, 2002.

Before BOGGS and GUY, Circuit Judges, and CARR, District Judge.[*]

## OPINION

Plaintiff-appellant Greyson Currence appeals the grant of summary judgment to the defendant, the City of Cincinnati, on Currence's claim for a violation of his First Amendment rights. For the following reasons, we AFFIRM the judgment of the district court.

## FACTUAL BACKGROUND

Currence is a male out-call dancer who owns and operates an exotic dance business. Currence provides nude, exotic dancing services in homes or hotel rooms for paying customers. (J.A. at 156, 163–64). He challenges Cincinnati Municipal Ordinance No. 230–1996, codified at Chapter 899 of the Municipal Code. This ordinance requires owners and employees of sexually-oriented businesses to obtain a license from the City Treasurer to operate or work for a sexually-oriented business. CINCINNATI, OHIO, MUNICIPAL CODE § 899–5. It also requires payment of an application fee determined by the City Treasurer. *Id.* at § 899–9. The application fee currently

[*] The Honorable James G. Carr. United States District Judge for the Northern District of Ohio, sitting by designation.

is $250. (J.A. at 107). If the applicant is an employee, the Treasurer will issue a temporary permit so the applicant can work during review of the application. *Id.* at § 899–5(C).

Section 899–7(A) requires the City to issue the license within thirty days of receiving the application unless: the applicant is under eighteen years old; the applicant or applicant's spouse is delinquent in paying taxes, fees, or fines; the applicant or applicant's spouse has been convicted of violating the regulation within the past two years; the applicant supplied false or incomplete information on the application; the applicant did not pay the application fee; the applicant's proposed location violated the city code; or the applicant violated the Ohio Criminal Code during specific time periods. Under § 899–13, the license must be renewed annually.

If the City Treasurer decides not to issue the license, he or she must notify the applicant under § 899–19(A). Section 899–19(A) gives the applicant ten days to respond in writing. If the applicant responds. § 899–19(A) requires the Treasurer to hold a hearing within ten days of receiving the written response. The applicant may, under § 899–19(A), present witnesses and evidence at the hearing. If the Treasurer does not make a determination on the application after thirty days, the Treasurer must, under § 899–19(A), issue a temporary license. The temporary license remains effective, under § 899–19(A), until the later of a final decision, expiration of any time for appealing a final decision, or entry of judgment on an appeal by a court of competent jurisdiction.

Section 899–19(B) provides that, once the Treasurer makes a final denial, the applicant may appeal under Chapter 2506 of the Ohio Revised Code. After the applicant files an appeal, the Treasurer must,

under § 899–19(B), issue a temporary license, which is effective until a final judgment is entered by a court of competent jurisdiction.

Section 899–22 prohibits nudity in any sexually oriented business. That section states, "Nudity is prohibited in any sexually oriented business including said business where no alcoholic beverages are sold, served or consumed, regardless of whether a permit has been issued pursuant to this Chapter 899."

## PROCEDURAL BACKGROUND

In district court, Currence asserted federal and state-based challenges to the ordinance: 1) the licensing requirement was a prior restraint on First Amendment protected expression; 2) the application fee was an unconstitutional tax on protected expression; 3) the ban on nudity was intended to prevent expressive activity from occurring at all; and 4) the licensing ordinance was vague because it lacks standards for determining whether the license must be granted, the process for appeal, and whether outcall dancing can take place. (J.A. at 126, 136, 139, & 142). Both Currence and the City moved for summary judgment. (*Id.* at 115).

The district court granted the City's motion for summary judgment and denied Currence's motion for summary judgment. (*Id.* at 145). The district court found that Currence had standing to challenge the license requirement, application fee, and nudity ban. (*Id.* at 123). The district court subsequently found that the license requirement, application fee, and nudity ban passed First Amendment scrutiny. (*Id.* at 136, 138, 141). Having decided the federal constitutional claims, the district court declined to exercise jurisdiction over the state-based claims and dismissed them. (*Id.* at 144–45).

Both parties challenge the district court's ruling. The City contends the district court erred by finding Currence had standing to bring a suit for a First Amendment violation. Currence contends the district court erred by ruling that the license scheme and nudity ban did not violate the First Amendment.

## STANDARD OF REVIEW

This court reviews a grant of a motion for summary judgment de novo. *Smith v. Wal–Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir.1999). Summary judgment will be affirmed if a review of all the evidence in the record, in a light most favorable to the party opposing summary judgment, shows that there is no genuine issue as to any material fact entitling the moving party to judgment as a matter of law. FED.R.CIV.P. 56(c). If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. Ripeness

The City argues that Currence does not have standing to assert a facial challenge to the licensing ordinance because his claim is not ripe. The City argues that Currence neither applied for nor was denied a license. Currence claims he was denied a license. (First Br. of Pl.-Appellant at 4).

 This is a factual dispute that was not considered by the district court. Ripeness may, however, be raised for the first time on appeal. *In re Cool Fuel, Inc. v. Board of Equalization of the State of Cal.*, 210 F.3d 999, 1006 (9th Cir.2000) (citing *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 58 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)).

If Currence was denied a license, his claim clearly is ripe. If Currence was not denied a license, he is making a facial challenge, which presents ripeness concerns.

"The ripeness doctrine exists to ensure that courts decide 'only existing, substantial controversies, not hypothetical questions or possibilities.'" *Dixie Fuel Co. v. Commissioner of Soc. Sec.*, 171 F.3d 1052, 1057 (6th Cir.1999) (quoting *City Communications, Inc. v. City of Detroit*, 888 F.2d 1081, 1089 (6th Cir.1989)). It centers on whether the facts are developed sufficiently to permit determination. *Hallandale Prof. Fire Fighters v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir.1991).

A ripeness inquiry requires consideration of: 1) the likelihood that the injury alleged by Currence will ever occur; 2) whether the issues are fit for judicial determination; and 3) the hardship to the parties from refusing consideration. *Adult Video Ass'n v. United States Dept. of Justice*, 71 F.3d 563, 568 (6th Cir.1995).

A case, generally, is more ripe if it involves questions of law and few contingent future events. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir.1995). Ripeness analysis is relaxed for First Amendment cases involving a facial challenge to a regulation because courts see a need to prevent the chilling of expressive activity. *Id.* at 1500.

Currence passes the three-prong test for ripeness. It is likely that an injury will occur. While it is possible Currence would be able to gain a license, the City, which closely has monitored and disapproves of Currence's activities, has given no evidence of an inclination to grant a license. Because nudity is a major component of Currence's dance routine, the nudity ban,

moreover, would injure Currence's ability to conduct his activities. It, therefore, appears that an injury to Currence is likely.

The issues are ready for judicial determination. While there is disagreement over whether Currence was denied a license, the case turns on issues of law, because the central dispute is whether the regulation violates the First Amendment. *See id.* at 1499; *see also Amelkin v. McClure,* No. 94–6161, 1996 WL 8112, 1996 U.S.App. LEXIS 1414, at *15 (6th Cir. Jan. 9, 1996) ("[T]his case turns largely on matters of law and not on contingent matters of fact; at the heart of this controversy is whether § 189.635(6) violates the First Amendment.").

Withholding judicial relief may impose an undue hardship on Currence. The hardship issue centers on whether the City's action threatens " 'a direct and immediate' " harm. *El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 496 (1st Cir.1992) (citation omitted). Currence faces a direct and immediate dilemma in how to conduct his dance routine within the boundaries of the law. Admittedly, this court has stated, "the caution and uncertainty caused by withholding judicial relief at this time is not an 'undue hardship.' Individuals who choose to conduct their affairs along the boundaries of the criminal law will necessarily incur some risks concerning the legality of their conduct." *Adult Video Ass'n,* 71 F.3d at 568 (citing *Polykoff v.*

*Collins,* 816 F.2d 1326, 1340 (9th Cir. 1987)). It appears, however, at least with the respect to the nudity ban, that the hardship is not uncertain.

Especially in light of relaxed ripeness standards for First Amendment facial challenges, this case is ripe for judicial review.

## II. Standing

Standing requires: 1) an injury in fact suffered by the plaintiff; 2) a causal connection between the injury and the conduct complained of; and 3) the likelihood that the injury will be redressed by a decision in plaintiff's favor. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ The district court interpreted the City's standing argument to center on the first requirement–an injury in fact. The district court stated that the City essentially argued that Currence could not suffer a First Amendment injury if his activities were not protected by the First Amendment. (J.A. at 119). To be protected by the First Amendment, one's conduct must constitute expression. But the First Amendment does not protect all expression. Currence's conduct must constitute a type of expression protected by the First Amendment for him to have standing.[1]

---

1. The City argues that this court should deny standing for prudential reasons. The City argues that it would be wise for this court to exercise judicial self-restraint under *Natural Resources Defense Council v. Jamison,* 787 F.Supp. 231, 235 (D.D.C.1990), because Currence is using the judiciary to facilitate the sale of personal, totally nude homosexual interactive conduct.

The court in *Jamison* states:
As to the prudential limits on the court's exercise of its jurisdiction, which may require a denial of standing "if as a matter of

judicial self-restraint it seems wise not to entertain the case," … plaintiff "must plausibly … assert that the injury is arguably within the zone of interests protected or regulated by the law on which the complaint is founded." … "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claims rest can properly be understood as granting persons in the plaintiff's position a right to judicial relief."
*Id.* (citing *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Action*

## A. Whether Currence's Conduct Constitutes Expression

The City argues, as it contended before the district court, that Currence's "sales were 'not expressive conduct protected by the First Amendment but rather are unprotected recreational, sexual escort services.'" (Appellee Br. at. 13 (citing City's Mem. in Supp. of Mot. for Summ. J. at 12)). In this court, the City claims that Currence engages in non-expressive sexually-oriented conduct.

The district court stated, "The City does not appear to argue that Plaintiff's activity is merely non-expressive conduct. Rather, the City's choice of words suggests that it believes that Plaintiff engages in obscenity." (J.A. at 121). By only discussing whether Currence's conduct constituted obscenity–a type of expression not protected by the First Amendment–the district court did not address the initial issue of whether Currence's activity involves expression under the First Amendment.

This court has held that the issue of whether erotic dancing constitutes expression is fact-specific. *DLS. Inc. v. City of Chattanooga*, 107 F.3d 403, 409 (6th Cir. 1997) ("We consider it appropriate to determine whether speech is implicated on a case-by-case basis as a question of fact, given the broad range of activities .that may be governed by this ordinance or laws

similar to it."). In his concurrence to *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 581, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (Souter, J., concurring), Justice Souter stated that, while not all dancing is expressive, a dance performed by a nude or nearly so dancer carries the message and expressive content of eroticism unless shown otherwise. The Supreme Court subsequently has stated that erotic, nude dancing is expression, at least in a public place. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).

The record, including a police surveillance tape, shows that Currence engages in nude dancing. Based on Sixth Circuit and Supreme Court precedent and Justice Souter's concurrence, Currence's activity is expressive for First Amendment purposes.

## B. Whether Currence's Conduct is Expression Protected by the First Amendment

The City alternatively argues that Currence sells sexually-oriented expressive conduct that is not protected by the First Amendment. The City contends that the district court incorrectly redefined the City's argument. The City argues that it did not contend, before the district court, that Currence engaged in obscenity.[2] The

Alliance of Senior Citizens of Greater Philadelphia v. Heckler, 789 F.2d 931, 936 (D.C.Cir. 1986); 13 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3531).

The City's argument is not well-taken. The City cites no Sixth Circuit precedent applying these prudential concerns to deny standing. The City quotes one portion of Young v. Klutznick, 652 F.2d 617, 623 (6th Cir.1981), which simply states that "courts have developed rules to limit their exercise of jurisdiction in particular cases when prudential considerations militate against invocation of the judicial process." The City provides no state-

ments addressing the standard stated in Jamison.

It seems clear, furthermore, that the claimed injury is within the zone of interests regulated by the law challenged in the complaint. Currence's business, the sale of erotic dancing performances, is regulated by the law because the law imposes certain restrictions or duties on Currence. We decline, accordingly, to forego consideration of the merits on the basis of prudential reasons.

**2.** The district court characterized the City's argument as stating the City believed Currence engaged in obscenity. (J.A. at 121).

City contends that it argued Currence engaged in unprotected recreational, sexual escort services. The district court, therefore, did not address the argument presented to this court.

The City classifies Currence's activities as personal sexually-oriented recreational escort services and outcall exotic dance. The City argues. "If both recreational dancing and personal escort services are not protected by the First Amendment, personal sexually-oriented recreational escort services such as outcall exotic dance are also not protected by the First Amendment." (Final Br. of Def.-Appellee at 17).

As noted, the Supreme Court has held that nude, sexually-oriented dancing is protected under the First Amendment. *City of Erie, supra,* 529 U.S. at 289, 120 S.Ct. 1382 ("[N]ude dancing of the type at issue here is expressive conduct, although we think that it falls only within the outer ambit of the First Amendment's protection.") (citing *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Schad v. Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)).

The City distinguishes the instant case from *City of Erie* on the basis that Currence's activity occurs in private settings, rather than in public places. Because the activity occurs in private, the City argues Currence's services are of the escort nature and fall outside the First Amendment. The City calls attention to Judge Posner's concurrence in *Miller v. City of South Bend,* 904 F.2d 1081, 1101 (7th Cir.1990) (Posner, J., concurring), in which he suggested that the smaller the audience for an erotic dance, the less the First Amendment protection for the performance. *Id.*

Because the Supreme Court has not distinguished between erotic dancing before private or public audiences, we apply the general rule set forth in *City of Erie,* 529 U.S. at 289, 120 S.Ct. 1382, and hold that erotic dancing is expression protected by the First Amendment. Currence thus has standing to challenge the ordinance because his nude dancing performances constitute expression protected by the First Amendment.

### III. Constitutionality of the Ordinance

#### A. Licensing Scheme

Currence argues that the licensing scheme unlawfully imposes a prior restraint on First Amendment expression. Currence contends that the licensing scheme impermissibly restricts speech on the basis of content and the speaker's identity and is, therefore, not content-neutral. Currence argues that, because the licensing scheme requires only sexually-oriented businesses and their employees, rather than all businesses and employees, to obtain licenses, the scheme is an unconstitutional prior restraint.

The City contends that, as a general proposition, adult sexually-oriented businesses may be regulated. The City argues that sexually-oriented conduct in private places creates a propensity for prostitution, obscenity, and transmission of disease, as well as a heightened risk that minors will be exposed to these conditions. The City argues it has a compelling interest in preventing these conditions and risks, so that its ordinance does not impose an unlawful prior restraint on freedom of expression.

In *Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884 (6th Cir.2000), this court

The district court subsequently held that Currence's activities were not obscene. (*Id.* at 123) (citing *Sable Communications v. FCC,*

492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989)).

stated the standard for analyzing whether an ordinance is a constitutionally invalid prior restraint. The court stated:

> Thus, a licensing scheme must remove standardless discretion from government officials and contain two procedural safeguards: (1) the decision whether to issue a license must be made within a specified brief period, and the status quo must be maintained during that period and during judicial review, and (2) there must be a "guarantee of prompt judicial review."

*Id.* at 890 (citing *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 225 (6th Cir.1995)). The Cincinnati ordinance does not vest unbridled discretion in government officials. The Treasurer must issue a license if the applicant meets all of the specified criteria, which are objective in character. As the district court stated, there is no "room for value judgments in determining whether or not to issue the license." (J.A. at 129).

The decision whether to issue a license is to be made within a specified and brief period of time. The status quo is maintained during that period and while judicial review, if any, occurs. The Treasurer must issue the license within thirty days, and unlike the ordinance in *Nightclubs*, an applicant is not required to pass health and fire inspections as a condition precedent to being licensed.

The applicant must, under § 899–7(A), obtain a certificate of compliance under the zoning code. The zoning code, however, requires issuance of a compliance certificate within ten days of filing. If zoning requirements are not met, the business may operate during the pendency of an appeal.[3] As the district court determined, the maximum period of delay resulting from the zoning requirements, under Cincinnati Municipal Code § 1477–421, would be seven to ten days for the initial zoning determination, thirty days for a final decision from the Zoning Board of Appeals, and then thirty days from the filing of a notice of appeal.

Because the filing of a notice of appeal permits operation, the district court read the zoning and licensing ordinances together to mean that a copy of the notice of appeal satisfies the certificate of compliance requirement under the licensing ordinance. (J.A. at 133). The applicant would thus have to wait a maximum of seventy days to begin operation when considering the zoning and licensing ordinances together because it could take a maximum of forty days to obtain a zoning certificate of compliance or notice of appeal and a maximum of thirty days to obtain a permanent or temporary license. (J.A. at 132–33).

Because it appears that a period of at least seventy-four days constitutes a reasonable amount of time to begin operation, the City's licensing scheme passes the first prong of a prior restraint analysis. *See East Brooks Books*, 48 F.3d at 225 (discussing *United States v. Thirty–Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971)).

The licensing scheme also provides for prompt judicial review. The court, in *Nightclubs*, acknowledged that this is a difficult task for cities because they cannot control judicial dockets. *Nightclubs*, 202 F.3d at 893. To alleviate this problem, the court suggested that a city enact an ordinance that: 1) requires a license to issue if the court does not decide the issue within

---

**3.** The City conceded, before the district court, that the zoning requirements did not apply to Currence because he operated his business from his home. The district court held, however, that even if the zoning conditions applied to Currence, unreasonable delay would not result.

a certain period of time; or 2) issues a provisional license to businesses or employees who seek judicial review. *Id.* at 894 (citations omitted). The City's ordinance does the latter–it issues a license pending judgment by a court.

The licensing ordinance, thus, passes the prior restraint analysis set forth in *Nightclubs.*[4]

### B. Nudity Ban

■ Currence argues that the nudity ban is not content-neutral because the purpose of the ordinance is to prevent expressive activity from occurring at all. Currence also argues that his expressive activity is entitled to more protection because it occurs primarily in homes. Currence finally argues that the district court misapplied *City of Erie, supra.* Currence contends the Supreme Court concluded that requiring dancers to remain minimally clothed only had a de minimis effect on expression.

The City argues that the ban does not target expression. The City contends that the Supreme Court has held that the right to sell sexually-oriented services, while nude, does not override the government interests in controlling adverse secondary effects.

In *City of Erie,* the Supreme Court discussed the framework for analyzing ordinances addressing public nudity. The Court stated that a more stringent level of scrutiny applies when the ordinance is related to the suppression of expression. 529 U.S. at 289, 120 S.Ct. 1382. When the regulation is not related to suppressing expression, the regulation must satisfy the less stringent standard set forth in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

Here, the ordinance appears to be unrelated to the suppression of expression. The ordinance expresses reasonable concerns about the secondary effects of sexually-oriented business such as: deleterious effect on surrounding businesses and residential areas, increased crime, diminution of property values, connection to unlawful sexual activities, increased unhealthful conduct, sexual transmission of disease, and harmful effects to children. (J.A. at 66–67). Similar to the ordinance at issue in *City of Erie,* this ordinance "does not attempt to regulate the primary effects of the expression, *i.e.,* the effect on the audience of watching nude erotic dancing, but rather the secondary effects, such as the impacts on public health, safety, and welfare . . . ." 529 U.S. at 292, 120 S.Ct. 1382.

Under *O'Brien,* the ordinance must: 1) be within the constitutional power of the city to enact; 2) further an important or substantial government interest; 3) be unrelated to the suppression of expression; and 4) establish a restriction that is no greater than is necessary to further the government interest. *Id.* at 296–301, 120 S.Ct. 1382. The district court did not discuss all four prongs but, instead, focused on whether extending the ordinance's nudity proscription is overly restrictive.

The ordinance is within the City's governmental power because the protection of health and safety are within a government's police powers. *Id.* at 296, 120 S.Ct. 1382 ("Here, Erie's efforts to protect public health and safety are clearly within the city's police powers."). Important governmental interests are at stake, namely: controlling adverse secondary effects related to public nudity such as prostitution, ob-

---

**4.** Currence challenged the application fee as an unconstitutional tax before the lower court. Currence also challenged the licensing scheme as vague before the district court. Currence makes no mention of these arguments on appeal.

scenity, transmission of disease, and danger to minors. These interests were endorsed in *City of Erie. Id.* ("The asserted interests of regulating conduct through a public nudity ban and of combating the harmful secondary effects associated with nude dancing are undeniably important.").

To demonstrate that the asserted secondary effects are a threat, "the city need not 'conduct new studies or produce evidence independent of that already generated by other cities' .... 'so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.'" *Id.* (quoting *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 51–52, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). The City relied on reviews of the secondary effects of sexually-oriented businesses in thirteen other cities. (J.A. at 66). The City thus demonstrated that the asserted secondary effects properly are subject to legislative deterrence.

The City's ordinance furthers its legitimate governmental interests. As the Court stated in *City of Erie,* "[I]t is evident that, since crime and other public health and safety problems are caused by the presence of nude dancing establishments ..., a ban on such nude dancing would further [the] interest in preventing such secondary effects." *Id.* at 300–01, 120 S.Ct. 1382.

The ordinance also is unrelated to the suppression of expression. The ordinance aims to regulate the secondary effects of the expression, not the expression or its primary effects such as "the effect on the audience of watching nude erotic dancing." *Id.* at 291, 120 S.Ct. 1382.

The district court only expressed concern with the fourth element of *O'Brien:*

Not all of the identifiable secondary effects of sexually oriented businesses are implicated by nude outcall dancing. For instance, the Court doubts seriously that nude outcall dancing to private homes would ever have a deleterious effect on neighborhood property values or cause urban blight. On the other hand, opportunities to engage in prostitution are certainly increased in this setting as are the chances that minors will be exposed to this activity.

(J.A. at 140–41).

The court ultimately concluded that the City's interest only was diminished slightly and *O'Brien* was satisfied.

The district court's rationale was correct. Certain secondary effects remain a concern with outcall services, such as: prostitution, exposure to minors, and obscenity. The City has an important interest in preventing such effects, and the nudity ban furthers this interest. The City has not established a restriction that is greater than is necessary to further the government interest. The nudity ban is constitutional under the First Amendment.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.