**DEJA VU OF KENTUCKY, INC., et. al., Plaintiffs,**

v.

**LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT, Defendant.**

**No. CIV.A. 01–51–KSF.**

United States District Court, E.D. Kentucky.

April 17, 2002.

H. Louis Sirkin, Sirkin, Pinales, Mezibov & Schartz, Cincinnati, OH, Bradley J. Shafer, Shafer & Associates, P.C., Lansing, MI, for Plaintiffs.

Edward W. Gardner, Andrea Lynne Weddle, Lexington–Fayette Urban County Government, Lexington, KY, for Defendant.

## OPINION & ORDER

FORESTER, Chief Judge.

This matter is before the Court upon the following motions: defendant's motion to dismiss [DE # 16] and plaintiffs' motion for summary judgment [DE # 13]. The plaintiffs have responded to the defendant's motion to dismiss and the time has expired for the defendant to file a reply. The plaintiffs' motion for summary judgment is fully briefed.

### I. FACTUAL & PROCEDURAL BACKGROUND

The plaintiffs seek to declare as unconstitutional, and to enjoin enforcement of, Lexington–Fayette Urban County Ordinance No. 56–97, as amended. This Ordinance, originally passed in 1997, regulates and licenses adult entertainment establishments and adult entertainers. The defendant Lexington–Fayette Urban County Government (hereinafter "LFUCG" or "defendant") amended this ordinance on March 2, 1999, and the amended version was designated at Ordinance No. 47–99 and published on March 10, 1999. The Ordinance was codified into the Lexington–Fayette County Code as Section 14–13, and its original version and all amendments are collectively referred to as the "Ordinance."

Plaintiff Deja Vu of Kentucky, Inc., owns and operates "Deja Vu," an adult cabaret style nightclub located in Lexington, Kentucky. Deja Vu features clothed, nude and semi-nude nonobscene performance dance entertainment. Deja Vu opened to the public in 1995, and has continually operated on the premises since that time. The club does not serve alcoholic beverages.

Plaintiff One Solid, Inc. owns and operates "Solid Platinum," a separate adult cabaret style nightclub located in Lexing-

ton. Solid Platinum also features clothed, nude, and semi-nude non-obscene performance dance entertainment, and possesses an alcohol license permitting it to sell alcoholic beverages on the premises.

Plaintiff Jane Roe I is a 22 year old female resident of the Commonwealth of Kentucky. She currently works as an exotic danger at the Deja Vu Club. In 2000, she pled guilty to the possession of two "Ecstasy" tablets in Ohio. This drug possession conviction renders Jane Roe I unable to obtain a license to dance pursuant to provisions of the Ordinance.

Plaintiff Jane Roe II is a 29 year old female resident of the Commonwealth of Kentucky. She also works as a dancer at the Deja Vu Club, and alleges that the Ordinance unconstitutionally infringes on her right to expression.

Separate plaintiffs, none of whom are common to this action, filed suit in Fayette Circuit Court presenting primarily state law challenges to the Ordinance at bar. The Commonwealth of Kentucky Court of Appeals rendered an opinion styled *Restaurant Ventures, LLC, et. al. v. Lexington–Fayette Urban County Government*, upholding the Ordinance on January 5, 2001. On January 22, 2001, one of the four plaintiff groups in Restaurant Ventures filed a motion for discretionary review with the Kentucky Supreme Court. The Kentucky Supreme Court denied the motion for discretionary review in the state appellate proceeding styled *King Kelly, Inc., et. al. v. Lexington–Fayette Urban County Government* on December 12, 2001.

## II. DEFENDANT'S MOTION TO DISMISS

The defendant requests that the Court, in its discretion, decline jurisdiction under the Declaratory Judgment Act. In addition, the defendant argues that the Court should dismiss the plaintiffs' claims on the basis of the *Younger* and *Colorado River* abstention doctrines, as well as the *Pullman* deferral doctrine. Finally, the defendant cites the principles of comity, equity and federalism, as well as judicial economy, as bases for the Court to dismiss this case. The defendant's separate arguments for dismissal will be addressed in turn below.

### A. Declaratory Judgment Jurisdiction

■ Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may exercise jurisdiction over declaratory judgment suits, but is "under no compulsion to exercise that jurisdiction." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 278, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Brillhart v. Excess Ins. Co. of America.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). The Court considers five factors in deciding whether to exercise discretionary jurisdiction under the Declaratory Judgment Act: (1) whether a judgment would settle the controversy; (2) whether the declaratory judgment action will serve a useful purpose in clarifying the legal relations at issue; (3) whether a declaratory remedy is being used merely for "procedural fencing" type purposes; (4) whether use of the declaratory judgment action would increase friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *See e.g., Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir.1991); *see also State Farm Mutual Automobile Ins. Co. v. Brewer, et. al.*, 778 F.Supp. 925, 928 (E.D.Ky.1991). In addition to consideration of the five listed factors, the Court must make a full inquiry into all relevant considerations. *See Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1065 (6th Cir.1987).

For the reasons stated below, none of the five discretionary factors weigh in the

defendant's favor. The defendant first argues that the decision in the state court action is "broader in scope than this federal proceeding, [and] has settled almost all of the issues raised herein as well as a number of parallel issues involving Kentucky law and the Kentucky Constitution." *See* defendant's memorandum in support of motion to dismiss, p. 6. The defendant then states that a decision by this Court could "create rather than settle the controversy between the parties." *Id.* Regardless of the breadth of the Kentucky Appellate decision, numerous federal constitutional claims presented here were not presented to that court and thus were omitted from the court's analysis. For example, the Kentucky appellate opinion does not resolve (or even address) the statutory licensing scheme in terms of First Amendment prior restraint analysis. The present action and the state action do not involve common plaintiffs, only common defendants. Indeed, the present action is a separate "controversy" for declaratory judgment purposes and involves different "legal relations" between different plaintiffs. Regardless, this Court is in a position to clarify the legal relations between the litigants and directly settle the controversy based upon the federal constitutional claims squarely before the Court.

As for the remaining discretionary considerations for declaratory judgment actions, the defendant fails to grasp the fact that this case does not present the federalism issues normally involved with *parallel* federal and state actions. The obvious reason is that this case involves separate

plaintiffs and is *not* parallel to the state court proceeding raising similar issues. In addition, the defentant cites *Hayse v. Wethington,* 110 F.3d 18, 20 (6th Cir.1997) for the proposition that "it makes sense to wait for the resolution in the state appellate court, because an appellate court is particularly suited to hearing constitutional questions." Here, the Kentucky appellate decision was rendered on January 5, 2001, and the Kentucky Supreme Court declined discretionary review on December 12, 2001. *See* plaintiffs' response to defendant's motion to dismiss, Exhibit A. Therefore, there is no pending state court proceeding and federal resolution of the plaintiffs' complaint raising *federal claims* will not encroach on state jurisdiction because there is no alternative remedy that is more effective for these plaintiffs. *Cf. Brillhart* 316 U.S. at 495, 62 S.Ct. 1173 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.").[1]

 Finally, the defendant analogizes to the *Rooker–Feldman* doctrine, apparently in an attempt to convince the court that the declaratory judgment action before the Court is being used for "procedural fencing" type purposes. The *Rooker–Feldman* doctrine, *per se,* is entirely inapplicable to the case before the Court. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Ct. of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d

1. The defendant's reliance upon a Massachusetts district court case, *D.H.L. Associates, Inc. v. O'Gorman,* 6 F.Supp.2d 70 (D.Mass. 1998), *aff'd,* 199 F.3d 50 (1999) *cert. denied,* 529 U.S. 1110, 120 S.Ct. 1965, 146 L.Ed.2d 796 (2000), is not persuasive because the cited case involved requested declaratory relief in the form of an advisory ruling against future regulation, unlike this case that squarely presents the threat of immediate harm to the plaintiffs. *See* defendant's motion to dismiss, p. 3 n. 6. ("Since the entry of the Kentucky Supreme Court order denying discretionary review Defendant has begun reviewing, revising and up-dating the forms and procedures to implement the Ordinance.").

206 (1983), construed together broadly stands for the proposition that a plaintiff may not directly appeal a case decided in state court to the lower federal courts. *See Gottfried v. Medical Planning Services, Inc.,* 142 F.3d 326, 330 (6th Cir. 1998). Obviously, the *Rooker–Feldman* doctrine does not apply when the plaintiff in the federal lawsuit was not the plaintiff in the state court action. As explained by the Sixth Circuit:

> As we stated in *United States v. Owens,* 54 F.3d 271 (6th Cir.1995), 'Clearly, a party cannot be said to be appealing a decision by a state court when it was not a party to the case. The *Rooker–Feldman* doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court.' *Id.* at 274. Because Gottfried was not a party to the lawsuit underlying the state court injunction, *Rooker–Feldman* does not bar the case any more than res judicata and collateral estoppel do.

*Gottfried,* 142 F.3d at 330.

Apparently, the defendant is attempting to argue that by analogy, the plaintiffs are avoiding the spirit of the *Rooker–Feldman* doctrine by the allegedly inequitable conduct of initiating this federal lawsuit. The plaintiffs clearly have the right to adjudicate their federal constitutional claims in this federal forum. As set forth by the Supreme Court:

> [I]n thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly,

escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts. . . .

*Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

There is absolutely no evidence before the Court to indicate that the plaintiffs are trying to conduct an "end run" around the *Rooker–Feldman* doctrine, as alleged by the defendant. The defendant's reliance on *Pickelman v. Michigan State Police,* 102 F.Supp.2d 765, 768, 771–72 (E.D.Mich. 2000), is misplaced because, unlike here, in *Pickelman* the parties in the state and federal cases had the same attorneys and parties were substituted in and out of the respective cases to arguably avoid abstention.

Even if the defendants had some evidence of strategic planning or consultation between the state court plaintiffs and federal court plaintiffs, minimum due process standards require that in order to be claim-precluded, a non-party must have actual control over the initial litigation, be entitled to hold the first party or its attorney legally accountable for the result in the first action, or be able to rescind its express or implied consent to being represented by the first party if the parties' interests diverge early in the litigation. *See, e.g., Becherer v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* 193 F.3d 415, 423 (6th Cir.1999). As stated, there is a complete dearth of evidence to suggest that these federal plaintiffs (or their attorneys) were actually "in control" of the state court action challenging this ordinance, where their business competitors served as plaintiffs.[2]

---

**2.** The federal plaintiffs' lack of control over the state litigation is evidenced by the fact that this action was filed in February 2001, before a petition for discretionary review by the Kentucky Supreme Court was filed. The plaintiffs maintain that they were unaware

that the state plaintiffs intended to file for discretionary review. A state court stay enjoining the ordinance was in place while the Kentucky Supreme Court decided whether to grant discretionary review. The presence of a state injunction blocking the ordinance would

## B. *Younger* Abstention

■ As stated by the defendant, *Younger* abstention applies when a state proceeding involving an important state interest is currently pending, affording the plaintiff an adequate opportunity to raise constitutional claims. *Carroll v. City of Mount Clemens,* 139 F.3d 1072, 1074 (6th Cir.1998). Aside from the fact that *Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was originally set forth to prevent a federal court from enjoining state *criminal* proceedings, the defendant's own explanation of the doctrine reveals that it is inapplicable to the case at bar.

As explained in the declaratory judgment jurisdiction analysis, there is no *parallel* state proceeding. Likewise, the federal plaintiffs did not have an adequate opportunity to raise constitutional claims at the state court level because they were not parties to that action. The defendant asserts in conclusory fashion that "[a]t the time this matter was filed, there was a parallel case challenging Defendant's Ordinance pending before the Kentucky Supreme Court ..." Defendant's motion to dismiss, p. 11. Again, the Kentucky court proceeding was not parallel to the federal action because these federal plaintiffs were not parties to that action. *See Gottfried,* 142 F.3d at 329 ("Younger abstention cannot apply to one like Gottfried who is a stranger to the state proceeding.").

In addition, the state action is no longer pending. The defendant has cited no authority indicating that this Court's analysis for whether to exercise its equitable discretion to apply *Younger* is limited to the specific considerations present at the time the federal suit was filed. To the contrary, this Court must consider the equitable factors in existence at the present time, not factors fixed in time at the date of the plaintiffs' complaint. The plaintiffs' argument, extended to its logical conclusion, would render the entire mootness doctrine moot. *See North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) ("Federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."). In actuality, considerations of equity and comity necessitate permitting the plaintiffs to adjudicate in federal court their claims that the Lexington Ordinance violates the United States Constitution. *See New Orleans Pub. Serv., Inc. v. New Orleans,* 491 U.S. 350, 372, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

## C. Colorado River Abstention

■ When considering a request to abstain based on *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Court's discretion is guided by eight factors, none of which are dispositive. *See, e.g., U.S. v. Commonwealth of Kentucky,* 252 F.3d 816, 827 (6th Cir.2001). These factors include: whether the state or the federal court has assumed jurisdiction over any res or property; which forum is more convenient to the parties; whether abstention would avoid piecemeal litigation; which court obtained jurisdic-

have presented a colorable standing issue, potentially leading this Court to defer the case. Likewise, the presence of the state injunction would have made the defendant's arguments in this motion somewhat more persuasive. However, the defendant delayed several months in filing the present motion, and the state injunction has long since been lifted, obviating any reason for this Court to decline to hear the plaintiffs' federal claims. Standing issues are not present at this juncture, because the defendant has acknowledged that enforcement of the ordinance is forthcoming at any time, tempered only by its discretion. *See* defendant's motion to dismiss, p. 3, n. 6.

tion first; whether state or federal law provides the basis for the decision on the merits; the adequacy of the state court action to protect the federal plaintiff's rights; the relative progress of the state and federal proceedings; and the presence or absence of concurrent jurisdiction. *Id.; Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir.1998).

*Colorado River* abstention is clearly inapplicable to this case because, as stated by the Sixth Circuit, "where, as here, there is no presently ongoing state proceeding parallel to the federal case, the exceptional circumstances necessary for *Colorado River* abstention do not exist." *Gottfried*, 142 F.3d at 329 (citing *Baskin v. Bath Township Bd. of Zoning Appeals*, 15 F.3d 569, 571–72 (6th Cir.1994)). As the Court has had to repeat throughout this opinion, there is no "presently ongoing state proceeding" to this case and the Kentucky case that has now concluded is not "parallel" to the present action because, *inter alia*, the suits do not share common plaintiffs. *See, e.g., Green*, 255 F.3d at 1097 n. 14; *Crawley v. Hamilton County Commissioners*, 744 F.2d 28, 31 (6th Cir.1984).

The defendant concedes that as a general rule, abstention does not apply to federal court plaintiffs who are not parties to the pending state court action. *See* defendant's motion to dismiss, p. 17 ("Defendant concedes that that, [sic] as a general rule, abstention does not usually apply to federal court plaintiffs who are not parties to the pending state court action."). However, the LFUCG tries to escape the fact that there is a nonidentity of parties here by analogizing to class action principles. The Court need not go beyond the defendant's own brief to dispel any comparison between this case and class actions. *See* defendant's motion to dismiss, p. 17 n. 13 ("Defendant also concedes that the 'derivative abstention' theory or 'privity' exception to this general rule is not available in

the instant case, since there is no exact identity of parties in the state and federal cases and the interests of the federal plaintiffs may not [sic] sufficiently 'intertwined' with those of the state court parties.") (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975)).

Even if consideration of the *Colorado River* factors were appropriate here (*i.e.*, if presented with a "presently ongoing state proceeding parallel to the federal case"), abstention would still not be appropriate. The defendant acknowledges that there is no "res" involved in this case and that the "convenience" factors are neutral. *See* defendant's motion to dismiss, p. 15. Moreover, the strong federal interests squarely presented, balanced with the fact that these same federal arguments were not made to the state court, persuade this Court not to abstain.

### D. *Pullman* Abstention or Deferral

■ The defendant sets forth the Pullman doctrine as "not requir[ing] the court to dismiss (true abstention) a case but merely to postpone consideration of its merits *until the state proceeding has concluded.*" Defendant's motion to dismiss, p. 19 (citing *Growe v. Emison*, 507 U.S. 25, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993) (emphasis added)). The defendant also adds that "if a writ of certiorari is filed in the state court case, abstention herein could result in postponing action until the United States Supreme Court reviews the state court action and not merely deferral to the Courts of the Commonwealth of Kentucky." *Id.*

The state proceeding has concluded as of December 12, 2001 when the Kentucky Supreme Court denied discretionary review. Consequently, the defendant is correct that there is no action pending for

which this court could possibly defer. The possibility of Supreme Court review of a state decision is clearly irrelevant to *Pullman* analysis; but, nevertheless, the time for filing a petition for writ of certiorari expired on March 13, 2002.

Even if it were necessary to consider the merits of the *Pullman* doctrine, the defendant has not presented any uncertain issues of state or local law that would "eliminate or reduce the scope of adjudication of the federal constitutional claims." *See* defendant's motion to dismiss, p. 19. (citing *Chez Sez III Corp. v. Township of Union,* 945 F.2d 628, 631–33 (3d Cir.1991)). Likewise, as only federal issues are before the Court, there is no risk of an erroneous construction of the state or local law that would disrupt important state policies. *See id.* In fact, the defendant has not identified any way in which the state decision leaves state or local law matters unresolved or uncertain. *See id.*

In sum, all of the reasons set forth by the defendant to dismiss this action are without merit and are hereby rejected. This Court has a "virtually unflagging obligation" to exercise its jurisdiction and even a ***pending parallel*** state suit involving the same subject matter does not ***require*** the Court to abstain. *See, e.g., Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236; *Stanton v. Embrey,* 93 U.S. 548, 554, 3 Otto 548, 23 L.Ed. 983 (1876).

## III. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue at to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence, all facts and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies,* 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

### B. Legal Analysis

### 1. LFUCG's Licensing Scheme, on its face, does not contain adequate procedural safeguards as required by the First Amendment

■ A "prior restraint" exists when the government conditions speech upon the

prior approval of public officials. *See, e.g., Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 889 (6th Cir.2000) (citing *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)). Prior restraints are presumptively invalid because they typically involve "two evils that will not be tolerated": (1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) "the risk of indefinitely suppressing permissible speech" when a licensing law fails to provide for the prompt issuance of a license. *Id.* (citing *Southeastern Promotions* at 558, 95 S.Ct. 1239); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225–27, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

*Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), sets forth the constitutional requirements for a licensing scheme to provide adequate and prompt judicial review of any government restraint of expression. Justice Brennan stressed that three procedural safeguards are required for a prior restraint licensing scheme to pass constitutional muster. *Id.* at 58–59, 85 S.Ct. 734. First, the decision whether to issue a license must be made within a "specified brief period," and, if judicial review is sought, the status quo must be preserved pending "a final judicial determination on the merits." *Id.* at 59, 85 S.Ct. 734. Next, the licensing scheme "must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." *Id.* Finally, the licensing scheme must place the burden of instituting judicial proceedings and proving that expression is unprotected on the government censor rather than the exhibitor or speaker. *Id.* at 58, 85 S.Ct. 734.

The Supreme Court has subsequently explained that two of the three *Freedman* safeguards "are essential" to prevent a licensing scheme from causing undue delay in the issuance of a license: "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied." *FW/PBS,* 493 U.S. at 228, 110 S.Ct. 596. However, *FW/PBS* explains that the third *Freedman* requirement, that the government censor bear the burden of going to court and proving the unprotected nature of the speech, is inapplicable when a system of prior restraint does not require a public official to pass judgment on the content of any speech. *Id.* at 229–30, 110 S.Ct. 596. A concurring opinion in *FW/PBS,* joined by three Justices, stated that all three *Freedman* procedural safeguards are required for any system of prior restraint. *Id.* at 239, 110 S.Ct. 596.

While the third *Freedman* protection only applies when the prior restraint system requires a public official to pass judgment on the content of speech, it is clear that the first two *Freedman* procedural protections are required for a licensing scheme to comport with the First Amendment. *See Nightclubs,* 202 F.3d at 890 (citing *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 224, *reh'g denied* (6th Cir.), *cert. denied,* 516 U.S. 909, 116 S.Ct. 277, 133 L.Ed.2d 198 (1995)).

Here, as a preliminary matter, it is clear that the plaintiffs involved in erotic dancing engage in activity that receives some First Amendment protection. *See, e.g., Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (erotic dancing constitutes expressive activity "within the outer perimeters of the First Amendment"); *City of Erie v. Pap's A.M. d/b/a "Kandyland,"* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). Also, the defendant does not challenge the plaintiffs' standing to assert a facial challenge to this Ordinance and its licensing scheme, as the

plaintiffs are clearly subject to its provisions.[3]

Turning to the prior restraint imposed by the government, the defendant's Ordinance requires a license for owning/operating an adult entertainment establishment. "No person shall own an adult entertainment establishment as defined in section 14–13 of the Code without an adult entertainment establishment license. No person shall operate an unlicensed adult entertainment establishment." Ordinance Sec. 14–13.2. Similarly, any employee, working proprietor or independent contractor working as an adult entertainer in the adult entertainment establishment must receive a license before working. *See* Ordinance Sec. 14–13.3.

The most blatant constitutional infirmity with the licensing scheme pertains to the second *Freedman* procedural guarantee requiring prompt judicial review. The Sixth Circuit interprets the judicial review guarantee of *Freedman* and *FW/PBS* as requiring a "prompt final judicial decision." *Nightclubs*, 202 F.3d at 893; *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville and Davidson County*, 274 F.3d 377, 402 (6th Cir.2001). The judicial review provision in the Lexington Ordinances states that, "after a final LFUCG decision by the chief administrative officer or his designee," the applicant or licensee "may" appeal that decision to the Fayette Circuit Court after receiving notice of the LFUCG decision. *See* Ordinance Sec. 14–13.2(m).

Kentucky law does not provide for judicial appeals from administrative decisions.

*See Nightclubs*, 202 F.3d at 891 (citing K.R.S. § 23A.010(4)). Instead, an aggrieved applicant or licensee may file an "original action" in a Kentucky court. *Id.* The state court "original action" then proceeds as a "limited trial de novo, including review of the record of the board and other evidence." *Id.* (citing *City of Covington v. Tranter*, 673 S.W.2d 744, 748 (Ky.Ct.App.1984)). However, "Kentucky law does not in any way limit the time for furnishing transcripts, conducting a court hearing or rendering a judicial decision." *Id.* at 891–92. The Supreme Court holds that judicial review processes with "potential delays of over five months are impermissible." *Nightclubs*, 202 F.3d at 892 (citing *East Brooks Books*, 48 F.3d 220, 225) (discussing *Southeastern Promotions*, 420 U.S. 546, 562, 95 S.Ct. 1239, 43 L.Ed.2d 448 and *U.S. v. Thirty–Seven (37) Photographs*, 402 U.S. 363, 373–74, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971)). As stressed by the Sixth Circuit, this Kentucky judicial review of prior restraints "fails to guarantee judicial review of [LFUCG's] licensing decisions within **any** particular time, let alone within five months." *Nightclubs*, 202 F.3d at 892 (emphasis added). In addition, "[t]his procedure for judicial review contains an even greater potential for indefinite delays than the Memphis scheme this Court found unconstitutional in *East Brooks Books*." *Id.* (citing *East Brooks Books*, 48 F.3d at 225). Clearly, the defendant's Ordinance fails to guarantee prompt judicial review as defined by *Nightclubs*.[4]

---

**3.** Standing for a facial challenge is met when there is a lack of adequate procedural safeguards necessary to ensure against undue suppression of protected speech. *FW/PBS*, 493 U.S. at 223–24, 110 S.Ct. 596.

**4.** The LFUCG Ordinance provision for judicial review is actually more narrow than that invalidated by the *Nightclubs* Court. The Or-

dinance at issue in *Nightclubs* provided for "the right to seek prompt judicial review of the Board of Commissioners' decision in any court of competent jurisdiction as provided by law." *Nightclubs*, 202 F.3d at 888. In contrast, the Ordinance at bar purports to limit judicial review to the Fayette Circuit Court. *See* Ordinance Sec. 14–13.2(m).

Next, the LFUCG Ordinance violates the first *Freedman* procedural safeguard of a "final judicial adjudication on the merits," independent from the above timeliness infirmity, in that any "appellate" review is discretionary. The Sixth Circuit has recently explained that in the context of prior restraint licensing schemes, discretionary judicial review does not satisfy the *Freedman* "prompt judicial review requirement." *Deja Vu of Nashville*, 274 F.3d at 401. Under Kentucky law, a court's decision to hear an original action filed pursuant to K.R.S. § 23A.010(4) is discretionary. *See Taxpayer's Action Group v. Madison County Bd. of Elections*, 652 S.W.2d 666, 668 (Ky.App.1983).

In addition to the above violation of the first *Freedman* procedural safeguard, the LFUCG Ordinance violates the first safeguard in a second way. The Ordinance does not allow for any form of "temporary" or "provisional" license during the local administrative appeal and judicial review process for those individuals and entities denied a license by the LFUCG. The Sixth Circuit has stated that "a city may well have to go beyond merely maintaining the status quo and actually permit the communication of protected expression until a judicial decision is rendered on a matter." *Nightclubs*, 202 F.3d at 894 (citing 11126 *Baltimore Blvd., Inc., v. Prince George's County, Maryland*, 58 F.3d 988, 1001 n. 18 (4th Cir.) (en banc), *cert. denied*, 516 U.S. 1010, 116 S.Ct. 567, 133 L.Ed.2d 492 (1995)).

Here, the LFUCG Ordinance does not allow for all businesses or entertainers subject to the ordinance to operate or perform during the judicial "appeal" of a license application denial. To the contrary, the Ordinance provides, "[n]o person shall operate an unlicensed adult entertainment establishment." Ordinance Sec. 14–13.2(a). In addition, "[n]o owner or operator of an adult entertainment es-

tablishment shall permit an unlicensed adult entertainer to work or perform services in its adult entertainment establishment." Ordinance Sec. 14–13.1(a)(8). This licensing scheme fails to adequately provide for a stay to those *first* applying for a license. As acknowledged by the defendant, "[s]ection 14–13.4 expressly grants all adult entertainment establishments *currently* existing and operating, who apply for a license within thirty (30) days of the effective date of the Ordinance, the right to continue to operate until a license is issued or a final decision is entered denying its application." Defendant's response to plaintiffs' motion for summary judgment, p. 10 (emphasis in original). Those without a license to begin with are without the protections of this stay provision.

The defendant concedes the potential construction of the Ordinance as providing a stay only to those existing businesses and entertainers and not for new licensee applicants, while citing the following provision: "If an applicant or licensee pursues a judicial appeal of a final decision of the chief administrative officer or his designee, then that licensee or applicant may continue to operate or work pending completion of judicial review." Defendant's response to plaintiffs' motion for summary judgment, p. 13 (citing Ordinance, Sec. 14–13.2(m)) (emphasis added by defendant). As stated, "[d]efendant concedes that this provision is not well drafted and, as argued by Plaintiffs, one could interpret the words 'may continue' as staying enforcement of the licensure requirement only for existing businesses and entertainers and not for new licensee applicants." *Id.* at 13–14. Aside from the above admission, the defendant's asserted interpretation of the Ordinance conflicts with Section 14–13.2(a) ("[n]o person shall operate an unlicensed adult entertainment establishment.") and 14–13.1(a)(8) ("[n]o owner or operator of

an adult entertainment establishment shall permit an unlicensed adult entertainer to work or perform services in its adult entertainment establishment.").

Notwithstanding the above conflicting provisions, the potential for discretionary enforcement based upon the language of the Ordinance is ironically the actual *fons et origo* of the *Freedman* procedural requirements. As stated, the defendant concedes that the stay provision is not well drafted and could be interpreted as staying enforcement of the licensure provisions only for existing businesses and entertainers and not for new licensee applicants. This, at best "poorly drafted" provision squarely implicates "the risk of censorship associated with unbridled discretion in government officials" that justify the procedural protections of *Freedman* and its progeny. *See Nightclubs*, 202 F.3d at 889 (citing *FW/PBS*, 493 U.S. at 225–27, 110 S.Ct. 596). The defendant's assertion that it "has done precisely as was anticipated by the Court in *Nightclubs*" is incorrect. *Nightclubs* certainly did not countenance the potential for new license applicants to be potentially subject to an unconstitutional prior restraint. Instead, the Sixth Circuit suggested that a city could "issue provisional licenses to those businesses and employees who chose to seek judicial re-

view of license denials." *Nightclubs*, 202 F.3d at 894. Here, the inadequate stay provision impacting initial license seekers serves as yet another procedural infirmity in the Ordinance. Promptness of review is essential because undue "delay compel[s] the speaker's silence" while the applicant awaits a decision. *FW/PBS* 493 U.S. at 226, 110 S.Ct. 596. Here, a possible remedy for the constitutional infirmity would be for LFUCG to actually issue a license pending judicial review. *See, e.g., Currence v. City of Cincinnati*, 2002 WL 104778 at * 7, 28 Fed.Appx. 438 (6th Cir. 2002).

In sum, the failure of the law to provide for a prompt judicial decision renders the entire ordinance facially unconstitutional, even if the Ordinance fully preserved the status quo and granted temporary or provisional licenses. The fact that judicial review is discretionary fails to meet the constitutional requirement of a "final judicial adjudication on the merits" and serves as a second independent reason for finding the entire Ordinance facially unconstitutional. Finally, the inadequate stay provision pending judicial review serves as a third independent reason to find the entire Ordinance facially unconstitutional.[5]

---

**5.** As it is unnecessary for resolution of the case, the Court does not reach the plaintiffs' argument that the Ordinance violates the third *Freedman* procedural guarantee. However, without deciding the issue, there is some merit in the argument that Ordinance Sec. 14–13(a)(2) (prohibiting specified sexual activities and the simulation of such sexual activities), requires a content-based decision by the government agents viewing the sexually related activities. If the Ordinance indeed required a content-based decision, then the burden of instituting judicial proceedings and proving that the expression is unprotected would be on the government. If the third *Freedman* procedural protection applied, then it would render unconstitutional the Kentucky requirement placing the burden on the person

seeking review of the administrative decision to furnish the transcript in state court. *Cf. Nightclubs*, 202 F.3d at 891 (citing *City of Covington v. Tranter*, 673 S.W.2d 744, 748 (Ky.Ct.App.1984)). The plaintiffs have not cited Sixth Circuit authority for applying *Freedman*'s third procedural protection to the Ordinance at bar. Instead, the applicability of *Freedman's* third procedural protection appears to be an open question. "Licensing schemes in a city ordinance regulating sexually oriented businesses constitute a prior restraint that must incorporate at least the first two *Freedman* procedural safeguards." *Deja Vu of Nashville*, 274 F.3d at 401 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 229–30, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)).

■ Ordinance Sec. 14–13 contains provisions that are purported to be independent of the above licensing provisions. *See* Ordinance Sec. 14–13.1(a) (*"General Requirements.* In addition to the licensing and other general requirements contained in this Code relating to adult entertainment establishments, each adult entertainment establishment shall comply with the following requirements...."). The defendant cites the Ordinance's severability provision:

> The sections, paragraphs, sentences, clauses and phrase of this Code *are severable;* and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment or decree of a court of competent jurisdiction, *such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code.* (emphasis added by defendant).

LFUCG Ordinance Sec. 1–5

In addition, the defendant cites Kentucky statutory and case law supporting severability. *See, e.g.,* K.R.S. § 446.090; *State Board for Elementary and Secondary Education v. Howard,* 834 S.W.2d 657, 664 (1992); *Tri–City Turf Club, Inc. v. Public Protection and Regulation Cabinet,* 806 S.W.2d 394, 397 (1991).

However, this case involves a facially unconstitutional statute lacking an adequate judicial review provision. As recently stressed by the Sixth Circuit:

> The lack of a judicial review provision renders the entire statute facially unconstitutional, and therefore, severing the ineffectual provision will not save the statute. Under these circumstances, we cannot give effect to the severability

clause, but must enjoin enforcement of the entire ordinance.

*Deja Vu of Nashville,* 274 F.3d at 402–03

This Court is obviously bound by Sixth Circuit precedent and consequently must enjoin Ordinance 14–13 in its entirety based upon the above procedural infirmities.[6] The Court is well aware that a municipality is without authority to control the time period in which a state or federal court will review a case. *Cf. Nightclubs,* 202 F.3d at 893. The Sixth Circuit has provided guidance after the LFUCG last amended the Ordinance at bar on how a municipality may regulate the secondary affects of adult establishments without violating the Constitution. For example, a provisional license issued to renewal license applicants and new applicants pending judicial review could avoid some of the constitutional infirmities identified in this opinion. *See Nightclubs,* 202 F.3d at 894 (citing *11126 Baltimore,* 58 F.3d at 1001 n. 18); *Currence v. City of Cincinnati,* 2002 WL 104778 at *7, 28 Fed.Appx. 438 (6th Cir.2002). Similarly, an ordinance could provide that a license shall issue if a reviewing court fails to reach a decision within in a constitutionally reasonable brief period of time. *Id.*

Recently, the Supreme Court was presented with the opportunity to address a significant Circuit split concerning whether *Freedman's* requirement of "prompt judicial review" means a prompt judicial determination or the prompt commencement of judicial proceedings. *See Thomas v. Chicago Park District,* 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). The Court determined that the licensing scheme at issue was a content-neutral time, place, and manner restriction, not implicating *Freedman's* procedural safeguards. *Id.* at 780. Consequently the split of authority remains as to *Freedman's* judicial review requirements.[7] Compare *Nightclubs,* 202

---

6. The escort provisions of the Ordinance are not before the Court and are thus not enjoined by this Opinion & Order. *See* Ordinance Sec. 14–13.5.

7. Unlike in *Thomas,* the LFUCG Ordinance squarely implicates the question that has re-

F.3d at 892–93; *Baby Tam & Co. v. Las Vegas,* 154 F.3d 1097, 1101 (9th Cir.1998); *11126 Baltimore Blvd., Inc., v. Prince George's County,* 58 F.3d 988, 998–1001 (4th Cir.1995) (en banc), with *Boss Capital, Inc. v. Casselberry,* 187 F.3d 1251, 1255–1257 (11th Cir.1999); *TK's Video, Inc. v. Denton County,* 24 F.3d 705, 709 (5th Cir. 1994); *Graff v. Chicago,* 9 F.3d 1309, 1324–25 (7th Cir.1993) (en banc); *Jews for Jesus, Inc. v. Massachusetts Bay Transp. Authority,* 984 F.2d 1319, 1327 (1st Cir. 1993).

#### 2. Plaintiffs' Remaining Challenges to the Ordinance

The plaintiffs' facial challenge to the judicial review provisions of the Ordinance present a purely legal issue, fit for judicial decision. *See e.g., Deja Vu of Nashville,* 274 F.3d at 398. The decision to enjoin the Ordinance in its entirety renders the plaintiffs' remaining challenges moot. The prior restraint arguments based upon recent Sixth Circuit law that are the basis the Court's decision to enjoin were not raised in the complaints submitted to the Kentucky Court of Appeals nor argued before that court. The decision to enjoin the Ordinance in its entirety is based solely upon the licensing infirmities identified in this opinion. This Court specifically does not reach the plaintiffs' remaining challenges, some of which are addressed in the Kentucky Court of Appeals' well-reasoned opinion.

sulted in the Circuit split. As stressed by the Fourth Circuit, "[t]he questions presented are difficult, and there is little authority to guide our decision." *11126 Baltimore Boulevard, Incorporated v. Prince George's County, Maryland,* 58 F.3d 988, 1001 (4th Cir.1995). This observation remains true in large part despite the Sixth Circuit's recent discussion of this matter in *Nightclubs* and *Deja Vu of Nashville.* It remains to be resolved whether the

#### IV. CONCLUSION

The Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) defendant's motion to dismiss [DE # 16] is DENIED;

(2) plaintiffs' motion for summary judgment [DE # 13] is GRANTED in part as to the procedural infirmities identified in this Opinion & Order; the plaintiffs' remaining claims are DENIED AS MOOT;

(3) LFUCG Ordinance Sec. 14–13 is DECLARED FACIALLY UNCONSTITUTIONAL and shall be and hereby is PERMANENTLY ENJOINED in its entirety;

(4) plaintiffs shall submit a petition for reasonable attorney's fees with affidavits and other supporting materials within ten (10) days of the date of this Opinion & Order. The defendant shall have seven (7) days to file any response. If the defendant responds, the plaintiffs shall then have five (5) days to file any reply;

(5) the bench trial scheduled in this case is SET ASIDE.

#### JUDGMENT

In accordance with the Opinion & Order entered contemporaneously with this Judgment, the Court HEREBY ORDERS AND ADJUDGES that

Sixth Circuit's analysis of *Freedman's* procedural protections are merely prophylactic or constitutionally mandated. In essence, the appellate courts must settle whether *Freedman's* requirements may be fulfilled by a sliding scale of judicial review or whether the certainty provided by a rule of law best balances the First Amendment rights with the rights of local governments to impose time, place and manner restrictions.

(1) the defendant's motion to dismiss [DE # 16] is DENIED;

(2) plaintiffs' motion for summary judgment [DE # 13] is GRANTED IN PART and DENIED AS MOOT IN PART as consistent with the Opinion & Order filed contemporaneously with this Judgment;

(3) LFUCG Ordinance Sec. 14–13 is DECLARED FACIALLY UNCONSTITUTIONAL and shall be and hereby is PERMANENTLY ENJOINED IN ITS ENTIRETY;

(4) plaintiffs shall submit a petition for reasonable attorney's fees with affidavits and other supporting materials within ten (10) days of the date of this Judgment. The defendant shall have seven (7) days to file any response. The plaintiffs shall then have five (5) days to file any reply;

(5) the bench trial scheduled in this case is SET ASIDE;

(6) this matter is STRICKEN from the active docket.