CAM I, INC., et al., Plaintiffs,

v.

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT (Successor in Interest to Jefferson County Fiscal Court), Defendant.

Civil Action No. 3:02CV–715–S.

United States District Court, W.D. Kentucky, at Louisville.

March 21, 2003.

C. Michael Hatzell, Louisville, KY, for plaintiffs.

I.G. Spencer, Jr., Louisville, KY, for defendant.

## *MEMORANDUM OPINION*

SIMPSON, District Judge.

This matter is before the court on motion of the plaintiffs, CAM I, Inc., and Blue Sky Video, Inc., (collectively referred to as "CAM I") for an order restraining and enjoining Louisville/Jefferson County Metro Government ("Metro Government"), successor to the Jefferson County Fiscal Court, from enforcing the provisions of Jefferson County Ordinance Chapter 111, which regulates adult entertainment establishments. CAM I maintains that the ordinance is unconstitutional facially and as applied, in contravention of its rights under the First, Fifth, Ninth and Fourteenth Amendments of the United States Constitution, and Sections 1, 2, 3, and 8 of the Kentucky Constitution.

An evidentiary hearing was conducted on December 19, 2002. Thereafter, post-hearing briefs and responses were filed by both parties.

After substantial consideration of the matter, we find that CAM I will suffer irreparable harm to its constitutional rights absent injunctive relief, and that it has a substantial likelihood of success on the merits of the case. Although there is insufficient evidence that the ordinance effectively "zones out" adult entertainment, we find it lacks adequate safeguards to ensure preservation of CAM I's constitutionally protected speech rights. First, the ordinance does not provide definite limitations on the time within which the Metro Government must issue or deny a license to operate an adult entertainment establishment. Second, the ordinance cannot guarantee that the Metro Government's licensing decision will be promptly reviewed on appeal by a court, nor does it allow the speech during the appeal period.

Enactments of a democratically-elected legislative body ought to be approached carefully and respectfully by the court. This is especially true where, as in this case, a great deal of public interest has been engendered by the legal controversy. The court is aware that many citizens of this community find the speech rights which the plaintiffs wish to exercise to be tawdry, disgusting, and licentious. Were good taste on trial, these values would have weight.

But our constitutional protections transcend matters of taste and popularity. A free society comes at some modest cost, in that the many may on occasion have to endure the unappetizing speech of a few.

This court does not exercise its power readily. But when, as here, our course is clear, we act without hesitation to invoke the constitutional safeguards necessary.

Injunctive relief will issue.

## I. BACKGROUND

Jefferson County Ordinance Chapter 111 [1] ("the ordinance") imposes licensing, zoning, and manner of operation restrictions on adult entertainment establishments, including, *inter alia*, adult amusement arcades, adult bookstores, adult motion picture theaters, and massage parlors. The penalty for each violation of the ordinance is a fine of $250 to $1,000, imprisonment up to ninety (90) days, or both.

The plaintiffs, CAM I, Inc. and Blue Sky Video, Inc., own and operate two adult entertainment establishments in Jefferson County, Kentucky at 8209 Preston Highway and 12909 Dixie Highway, respectively. Among other activities, they sell adult books, magazines, video tapes, and other sexual paraphernalia. The plaintiffs have not made an application for the adult entertainment license required by Jefferson County Ordinance Chapter 111 and have not otherwise made efforts to comply with the provisions of the ordinance. There is no dispute that by virtue of their business activities, the ordinance obliges them to so apply and comply. There are currently multiple criminal citations against the owners and employees of both establishments pending in Jefferson County, Kentucky, District Court for alleged violations of the ordinance.

CAM I challenges the ordinance as it addresses zoning, licensing, and judicial review. The relevant provisions of the ordinance are set forth below.

---

1. The ordinance, which was originally adopted in 1987, was last amended on December 10, 2002, after CAM I filed this action but before the court held an evidentiary hearing. We address the various amendments as they are relevant to our determination of this matter.

## A. *Zoning*

The first challenge we consider—briefed most extensively by both parties and the major focus of the evidentiary hearing—is whether the ordinance, as applied, "zones out" adult entertainment. Section 111.20 imposes certain restrictions on where adult entertainment establishments may be located. At the time CAM I filed this suit, the ordinance read as follows:

(A) The public entrance to an establishment engaging in adult entertainment activities shall not be located within 1000 feet of any building containing a public or private elementary, middle or secondary school, institution or higher education or business college, or any park-mall or park-like area of open space under the control of a governmental agency, or any building used for a place of religious worship, or any building used for a governmental function or public library. Such distance shall be measured along a straight line from the nearest property line of the property on which the building or public park-like area is located to the entrance to such establishment engaging in an adult entertainment activity.

(B) The public entrance to an establishment engaging in adult entertainment activities may not be located within 1,000 feet of an area zoned R–R, R–E, R–1, R–2, R–3, R–4, R–5, RRD, R–5A, R–5B, R–6, R–7, R–8A, OR–1, OR–2, OR–3, OTF or from an area used for residential purposes. Such distance shall be measured along a straight line from the boundary line of the newest area zoned or used for residential purposes to the entrance to such establishment engaging in an adult entertainment activity. All adult entertainment establishments shall

comply with all other pertinent zoning regulations of Jefferson County.

(C) The public entrance to an establishment engaging in adult entertainment activities shall not be located with 1,000 feet of the public entrance of another adult entertainment activity establishment.

(D) The public entrance to an establishment engaging in adult entertainment shall not be located within 500 feet of the public entrance of an establishment licensed to serve alcoholic beverages.

(Ord.24–1987, adopted and effective 9–22–87; Am. Ord. 7–1998, adopted and effective 4–1–98) Penalty, see § 111.99

After suit was filed, but before the evidentiary hearing, the Jefferson County Fiscal Court amended § 111.20 to change the distances in parts A, B, and C from 1000 feet to 500 feet. On January 16, 2003, Jefferson County merged with the City of Louisville, creating the Metro Government. The result is that the ordinance now applies in the area that was formerly the City of Louisville by operation of KRS 67C.115(1) and (4). The ordinance also continues to apply in Jefferson County.[2] For convenience, we will refer to the area now encompassed by the ordinance as the "Metro Government area."

## B. *Licensing*

CAM I also challenges the ordinance because it does not contain a requirement that a license be issued or denied within a definite and reasonable period of time. Section 111.36 contains seventeen separate items that must be included in an application for a license, several of which must be completed by various governmental officers. Specifically, CAM I contends that

---

**2.** The ordinance now applies county-wide unless another city within the county has adopted an ordinance on the subject which is the same or more stringent than the county ordinance. KRS 67.083(7). The parties have not advised that any city within Jefferson County has such an ordinance.

the following requirements allow Jefferson County to delay a license decision indefinitely:

(14) A certificate of occupancy where required and in all cases, a letter of compliance issued by the Zoning Administrator of Jefferson County or his designee certifying that the business is in compliance with applicable zoning laws or has nonconforming use rights and that the proposed use will not constitute an enlargement or expansion of the scope of such nonconforming rights. The Zoning Administrator shall issue the letter of compliance, or the reasons for denial thereof, within five (5) days of a written request for such letter by the prospective licensee.

(15) A certificate from the State Fire Marshall or other fire marshall having authority to enforce fire codes within that fire district, that all applicable fire regulations have been met and, in the case of an adult amusement arcade, that all requirements of § 111.19 of this ordinance have been met.

(16) A written statement from the Director of the Jefferson County Public Works and Community Development Agency or his designee that the premises comply with applicable provisions of the Uniform Kentucky Building Code, as adopted by Jefferson County, and in the case of an adult amusement arcade that all requirements of § 111.19 have been met. Such written statement, or the reasons for denial thereof, shall be issued within five (5) business days of a written request for the statement by the prospective licensee.

(17) A written statement from the Director of Public Health for the Louisville and Jefferson County Board of Health or his/her designee that the premises are adequately ventilated and contain public restrooms which satisfy the requirements of the relevant Kentucky Administrative Regulations pertaining to public restrooms. The Director of Public Health, or his designee, shall issue the written statement, or the reasons for denial thereof, within five (5) business days of a written request for the statement tendered by the prospective licensee. The Director of Public Health or his designee shall cause the premises of each licensee to be inspected quarterly to determine continued compliance with this requirement.

(Ord. 24–1987, adopted and effective 9–22–87; Am. Ord. 7–1998, adopted and effective 4–1–98) Penalty, see § 111.99

Only after all the application requirements of § 111.36 have been met does § 111.38 give the Director of the Jefferson County Office of Community Outreach a certain time frame within which to issue a license:

The Director will cause the premises to be inspected within five (5) days after all application requirements of § 111.36 have been complied with. The Director shall issue a license within three (3) business days after such inspection if all restrictions, requirements, conditions and applicable requirements of this ordinance and other applicable law have been met. No license will be issued if the prospective licensee or any owner, operator, director, partner, shareholder or employee has been convicted in Kentucky or any other jurisdiction of a felony, in any crime of a moral turpitude or any offense described in KRS 529.010 to 529.080 (prostitution); KRS 506.030 (if such solicitation pertains to a prostitution offense), KRS 510.150 (sexual offense), and KRS 531.010 to 531.040 (distribution of obscene matter and use of a minor to distribute obscene material), within the five years immediately preceding the date of application. The granting of a license does not certify compliance with all applicable laws nor

does it preclude Jefferson County from enforcement of all applicable laws or ordinances. If inspection reveals failure to comply with any restrictions, requirements or conditions herein, the Director shall notify the applicant in writing of that fact, stating what failures have been discovered, grant the prospective licensee fourteen (14) days to correct such failure to comply and informing the prospective licensee of the appeal procedure if the prospective licensee does not agree with the Director's decision.

(Ord. 24–1987, adopted and effective 9–22–87; Am. Ord. 7–1998, adopted and effective 4–1–98) Penalty, see § 111.99

### C. *Judicial Review*

The final challenge we address is whether the ordinance ensures prompt judicial review once the Director makes a licensing decision. Section 111.44(D) was amended on December 10, 2002, and now provides that after the administrative hearing process:

The findings and rulings of any hearing before the Director shall be a final determination of the issues raised and may be appealed to a court of competent jurisdiction within thirty (30) days, but shall not be enforced during the pendency of any such appeal unless otherwise ordered by the Court.

### II. LEGAL ANALYSIS

### A. *Standard for issuing a preliminary injunction*

In determining whether to issue a preliminary injunction, there are four factors we take into consideration:

(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim;

(2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief;

(3) the probability that granting the injunction will cause substantial harm to others; and

(4) whether the public interest is advanced by the issuance of the injunction.

*Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994).

██ Because this case involves the First Amendment, our primary concern is CAM I's likelihood of success on the merits. *See Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir.2000). It is well established that the infringement of First Amendment rights, even for minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *G & V Lounge, Inc. v. Michigan Liquor Control Com'n*, 23 F.3d 1071, 1078 (6th Cir.1994). Possible harm to others from the grant of injunctive relief is small when weighed against the possible infringement of First Amendment rights. The public has a substantial interest in the protection of First Amendment rights. *G & V Lounge*, 23 F.3d at 1079. This interest is particularly strong when freedom of expression is infringed by "the most serious and least tolerable infringement on First Amendment Rights," a prior restraint on speech. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Therefore, the issue of injunctive relief turns mainly on CAM I's ability to demonstrate the probability of a meritorious claim or claims.

### B. *CAM I's likelihood of success on the merits*

██ As an initial matter, we find that CAM I has standing to challenge the ordinance. "In the arena of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad li-

censing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license." *Freedman,* 380 U.S. at 56, 85 S.Ct. 734; *Nightclubs,* 202 F.3d at 889.

CAM I has raised several constitutional challenges to the ordinance. It is argued that the ordinance effectively "zones out" adult entertainment establishments in violation of *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and its progenies. Although both parties have offered a plethora of evidence on this issue, we find no support for the proposition that the ordinance in its current form "zones out" all adult entertainment.

CAM I also argues that the ordinance, which is clearly a prior restraint on speech, fails in several respects to provide the adequate procedural safeguards required by *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) and *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). First, it fails to require the Metro Government to issue or deny a license within a definite period of time, thereby creating the risk that permissible speech will be suppressed indefinitely. *Id.* at 227, 110 S.Ct. 596. Second, the ordinance fails to ensure that the licensing decision will be reviewed by a judicial officer within a reasonable period of time. We find a strong likelihood that CAM I will succeed in its challenge to the ordinance on these grounds.

## 1. Whether the ordinance in its current form "zones out" adult entertainment establishments

■ The Supreme Court has distinguished between two types of regulations designed to restrain speech—those that regulate based on content ("content-based"), and those that regulate without regard to content ("content-neutral"). Regulations that are enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment. *Renton,* 475 U.S. at 47, 106 S.Ct. 925. "On the other hand, so-called 'content-neutral' time, place and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.*

In *Renton,* the Court found that a zoning regulation that sought to regulate the secondary effects of an adult entertainment theater rather than the content of the films shown, was a "content-neutral" speech regulation. *Id.* at 49, 106 S.Ct. 925. The Court held that the City of Renton had a substantial governmental interest in preventing crime, protecting the city's retail trade, maintaining property values and protecting the quality of the city's neighborhoods, commercial districts and urban life. The Court further held that the zoning regulation allowed for reasonable alternative avenues of communication because it left more than 5% of the entire land area of Renton open for use as an adult theater site. *Id.* at 53, 106 S.Ct. 925.

The ordinance in this case also focuses on the secondary effects of adult entertainment establishments, rather than the content of the goods and services they provide. Thus, we analyze the ordinance under the two-prong "content-neutral" standard, looking at whether the ordinance serves a substantial government interest, and whether it allows for reasonable alternative avenues of communication.

CAM I does not challenge, and we do not doubt, that the Metro Government has a substantial interest in limiting the secondary effects of adult entertainment. In § 111.01(A–I), the ordinance sets forth specific findings on the secondary effects of adult entertainment, and in (K) states

that the purpose of the ordinance is to prevent these secondary effects. Because regulating the secondary effects of adult entertainment serves a substantial interest, the first prong of the test is satisfied.

Thus, the real issue before us is whether the ordinance allows reasonable alternative avenues of communication for adult entertainment establishments. In order to determine this, courts have generally looked at how much land is available within the municipality for such establishments under the zoning ordinance. In *Renton*, the Supreme Court held that a regulation which left more than 5% of the entire land area of the city open for use provided reasonable alternatives. 475 U.S. at 54, 106 S.Ct. 925. However, in *Schad v. Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), the Supreme Court struck down an absolute ban on adult businesses. The Sixth Circuit has found that "no reasonable alternatives exist where the zoning ordinance 'severely restricts' first amendment expression." *See CLR v. Henline*, 702 F.2d 637, 639 (6th Cir.1983)(finding zoning ordinance which allowed two to four restricted uses in a half mile strip of the city severely restricted First Amendment expression); *Christy v. City of Ann Arbor*, 824 F.2d 489 (6th Cir.1987)(remanding for a determination of whether an ordinance allowing adult businesses on 0.23% of available land was severely restrictive).

In making a determination of whether the Jefferson County ordinance allows for reasonable alternatives, we face a changing landscape. At the time this suit was filed, the ordinance required a 1000-foot buffer zone between an adult entertainment establishment and any residentially zoned area, school, park, church, government building, or other adult entertainment establishment. On December 10, 2002, several days before the evidentiary

hearing, the ordinance was amended to change the 1000-foot buffer zone to 500 feet. On January 6, 2003, Jefferson County merged with the City of Louisville to form the Louisville/Jefferson County Metro Government, and the ordinance is now applicable in the entire Metro Government area, including the area that was formerly the City of Louisville.

Were we constrained to rule on the ordinance as it read when this suit was filed, with a 1000-foot buffer zone and inapplicable to the area that was formerly the City of Louisville, we would find a substantial likelihood that CAM I would succeed with its argument that the ordinance "zoned out" adult entertainment. According to the testimony of both parties' experts, under the ordinance as it was when the suit was filed, there are at most two locations upon which an adult establishment could operate. An ordinance which leaves only two parcels of land on which the protected communication can take place amounts to a severe restriction on speech. *Henline*, 702 F.2d at 639.

During the evidentiary hearing, CAM I offered the testimony of Dr. William Dakan, a geography professor at the University of Louisville, and the individual responsible for drawing the boundaries for the 26 districts of the new Metro government. Dr. Dakan found that with a 1000-foot buffer, there was no commercially zoned area left in the "unincorporated area" of Jefferson County on which to place an adult entertainment establishment. Edwin Mullitt, a land use planner for the Louisville and Jefferson County Department of Planning and Development Services, testified for the Metro Government. He was able to find only one full parcel, and part of another parcel, that were suitable for an adult entertainment establishment using the 1000-foot-buffer zone.[3]

---

**3.** The difference in the results is explained by the fact that Dr. Dakan and Mullitt utilized slightly different methods to arrive at their

However, the ordinance has now been amended to reduce the 1000–foot buffer zone to 500 feet and the boundaries of the City of Louisville have disappeared. Therefore, we must base our decision on the ordinance as it now exists, because to do otherwise would be no more than a legal exercise. Because of the splintered testimony on the impact of the amended ordinance and the county's merger with the city, we explore both the amended ordinance by itself and the amended ordinance as applied to the new Metro area. We find that under both of these scenarios, CAM I has not provided sufficient evidence that the ordinance "zones out" adult entertainment establishments. CAM I failed to prove a lack of reasonable alternative channels with the buffer zone reduced to 500 feet. Its own expert, Dr. Dakan, testified he had not had the opportunity to determine whether or not there were possible locations available for adult entertainment establishments with the buffer zone reduced to 500 feet.[4] He could only testify that "it is probably highly unlikely" that a parcel would be available. The defendant's expert, Mullitt, had not done a study under this scenario either, and was unable to testify as to whether there were such areas within Jefferson County, outside the former City of Louisville boundaries.

CAM I also failed to prove a lack of reasonable alternatives in the Metro area, inclusive of the City of Louisville, with the 500–foot buffer zone. Dr. Dakan testified that he was unable to offer an opinion. Mullitt testified that without doing site inspections to determine whether the parcels were disqualified by the presence of churches, schools, parks, etc., he found 1051 parcels that may potentially be available.[5]

We therefore conclude that CAM I is unable to produce sufficient evidence that the ordinance in its current form—with the 500–foot buffer zone and encompassing the entire Metro Government area—fails to provide reasonable alternative channels of communication for adult entertainment establishments.

## 2. Whether the ordinance contains the procedural safeguards required by *Freedman v. Maryland*

■ A "prior restraint" is one that conditions speech on the approval of public officials. *Nightclubs*, 202 F.3d at 889. Although "prior restraints are not unconstitutional per se, any system of prior restraint comes to this Court bearing a heavy presumption against its constitutional validity." *FW/PBS*, 493 U.S. at 225, 110 S.Ct. 596. The reason is that prior restraints often contain "two evils that will not be tolerated: (1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) the risk of indefinitely suppressing permissible speech when a licensing law fails to

result. Dr. Dakan used a zoning-to-zoning survey, where he drew a 1000–foot buffer around all residential areas, and then looked to see if there where any commercial areas left. Mullitt did a parcel-to-parcel survey, where he drew a 1000–foot buffer around each commercial and residential parcel.

4. During the evidentiary hearing, and in its post-hearing brief, the Metro Government urged us to disqualify Dr. Dakan's testimony on *Daubert* grounds. We overruled that motion as we found that the fact that Dr. Dakan

had not done a scientific study on the 500–foot revision or using the City of Louisville went to the weight and not the admissibility of his testimony.

5. CAM I has moved to strike defendant's reply brief as it contains affidavits of witnesses they have been unable to cross-examine. As CAM I has the burden of proof on this issue, and has not adduced sufficient evidence, we find it unnecessary to consider the testimony of these witnesses.

provide for the prompt issuance of a license." *Nightclubs*, 202 F.3d at 889, *citing FW/PBS*, 493 U.S. at 225–27, 110 S.Ct. 596.

In *Freedman*, the Supreme Court, in invalidating a film censorship statute, set forth three procedural safeguards that are required to avoid constitutional infirmity: (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court. *FW/PBS*, 493 U.S. at 227, 110 S.Ct. 596.

In *FW/PBS*, the Supreme Court applied the principles in *Freedman* to a Dallas ordinance requiring adult businesses to pass inspections in order to obtain mandatory licenses. In a plurality opinion, Justice O'Connor, along with Justices Stevens and Kennedy, held that when dealing with a licensing scheme, two of the three *Freedman* safeguards were "essential." *Id.* at 230, 110 S.Ct. 596. "Limitation on the time within which the licensor must issue the license as well as the availability of prompt judicial review satisfy the 'principle that the freedoms of expression must be ringed about with adequate bulwarks.'" *Id.*, citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66, 83 S.Ct. 631, 9 L.Ed.2d 584, (1963).

In *Nightclubs, Inc. v. City of Paducah*, the Sixth Circuit applied the two *Freedman* safeguards to a Paducah, Kentucky ordinance that attempted to license and regulate sexually-oriented businesses and their employees. The court held that "a licensing scheme must remove standardless discretion from government officials" and must provide (1) that a licensing decision is made within a specified brief period of time, during which time the status quo

must be maintained; and (2) a guarantee of prompt judicial review. 202 F.3d at 890. The ordinance before us does not meet either of these requirements.

### a. The ordinance does not require that a licensing decision be made within a specified brief period of time

■ An application for a license to operate an adult entertainment establishment must include a certificate from the State Fire Marshall that all "applicable fire regulations have been met and, in the case of an adult amusement arcade, that all requirements of § 111.19 of this ordinance have been met." § 111.36(B)(15). However, the ordinance does not establish a time frame in which the Fire Marshall must issue or deny the certificate. As CAM I has pointed out, this report could take an unspecified period of time, and a license cannot be issued without the certificate.

The application must also include a certificate of occupancy from the Zoning Administrator of Jefferson County (§ 111.35(B)(14)), a written statement from the Director of the Jefferson County Public Works that the premises comply with applicable building codes (§ 111.36(B)(16)), and a written statement from the Director of Public Health for the Louisville and Jefferson County Board of Health that the premises contain adequate ventilation and public restrooms (§ 111.36(B)(17)). The ordinance requires that these be issued or denied within specified and brief time periods. However, there is no remedy for the licensee if an agency does not do so within the requisite time frame. Several courts have held that such time limits, absent some remedy for failure to act or some provision that a license will issue in the event compliance does not occur, are illusory. *Artistic Entertainment, Inc. v. City of Warner Robins*, 223 F.3d 1306, 1310

(11th Cir.2000); *Redner v. Dean,* 29 F.3d 1495, 1500 (11th Cir.1994).

Without reasonably brief time limits for licensing-related decisions, and remedies for breach of such time limits, the ordinance has the potential to leave an applicant in a sort of legal limbo, with neither license nor remedy. Such a situation is precisely what the first *Freedman* safeguard was designed to prevent. "A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *FW/PBS,* 110 S.Ct. at 605.

### b. The ordinance cannot ensure prompt judicial review

The Sixth Circuit reads the second *Freedman* safeguard to require a prompt "final judicial determination on the merits," and not merely an avenue for judicial review. *Nightclubs,* 202 F.3d at 893.

In *Nightclubs,* the Sixth Circuit found that Kentucky law does not guarantee prompt judicial determination of a licensing decision within any particular period of time:

> Although Kentucky law does not provide for judicial appeals from administrative decisions, an aggrieved applicant or licensee may file "an original action" in Kentucky court. See K.R.S. § 23A.010(4) (review of administrative decision constitutes not appeal, but original action). The case then proceeds according to standard court rules, with the state court conducting a "limited trial de novo, including review of the record of the board and other evidence." *City of Covington v. Tranter,* 673 S.W.2d 744, 748 (Ky.App.1984). The person seeking review of the administrative decision generally bears the burden of furnishing the transcript to the state court. *Id.* Kentucky law does not in any

way limit the time for furnishing transcripts, conducting a court hearing, or rendering a judicial decision. 202 F.3d at 891–92.

Nothing has changed since *Nightclubs* with regard to Kentucky's procedure for judicial review of an administrative decision. A municipality is still unable to compel a Kentucky court to issue a decision within a defined or reasonably brief period of time.

Although a municipality is unable to control the period of time in which a court will decide a matter, several courts have considered whether a municipality may craft an ordinance to circumvent the problem. These opinions have indicated, in dicta, that a municipality may be able to avoid the *Freedman* requirements by providing that if a license is denied, a provisional license will issue to allow the applicant to exercise First Amendment rights during the appeal process. *Nightclubs,* 202 F.3d at 894; *Kentucky Restaurant Concepts, Inc. v. The City of Louisville, et al,* 209 F.Supp.2d 672, 700 (W.D.Ky.2002). Under that scenario, the municipality would go beyond preserving the status quo and actually permit the speech during the appeal period, thereby circumventing the need for prompt judicial review. If the speech is not restrained during the period of judicial review, a prompt judicial decision becomes unnecessary.

While Metro Government contends that the ordinance was amended to comply with the recommendations in these decisions, it fails to provide for the issuance of a provisional license to a prospective licensee, and thus runs head first into the implications of *Freedman.*

The only provision of the ordinance that addresses judicial review of a licensing

decision is § 111.44(D), which provides that:

> The findings and rulings of any hearing before the Director shall be a final determination of the issues raised and may be appealed to a court of competent jurisdiction within thirty (30) days, but shall not be enforced during the pendency of any such appeal unless otherwise ordered by the Court.

Because this provision is under the section of the ordinance entitled "Suspension, Revocation, or Renewal," § 111.44, it may be argued that only decisions of the Director regarding suspension, revocation or renewal of existing licenses will not be enforced during the pendency of an appeal. In such a case, the non-enforcement of the Director's decision to suspend, revoke, or not renew the license would result in the applicant continuing to have a license during the appeal period. However, CAM I points out that even this result is problematic, as it is unclear what time frame the "pendency of the appeal" encompasses, and because there is no safeguard that would prevent the Metro Government from requesting a court to enforce the ordinance.

Moreover, the problem of prompt judicial review is still not solved for prospective licensees. Because of its location in the ordinance, it appears that § 111.44(D) does not apply to the decision of the Director to not issue a license. Even assuming, *arguendo*, that the non-enforcement provision was applicable to the Director's decision to deny a license to a prospective licensee, the provision would only ensure non-enforcement of the denial. The prospective licensee would still not have a license, because non-enforcement of a denial does not equal a right to operate. Since the ordinance requires a license to operate, the denied applicant cannot conduct an adult entertainment business during the appeal period without risking prosecution.

Gratuitous promises by the Metro Government that there is "no manifest intent to enforce the Ordinance during the 30–day period within which an applicant may appeal an adverse administrative decision," do not survive constitutional muster because they do not guarantee that the speech will be permitted until the appeal is decided by a court. Moreover, such promises made in a brief are non-binding and essentially worthless.

■ As a final matter, we note that "the lack of a judicial review provision renders the entire statute facially unconstitutional, and therefore, severing the ineffectual provision will not save the statute." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson County*, 274 F.3d 377, 402–03 (6th Cir.2001). Enforcement of the entire ordinance must therefore by prohibited.

### Conclusion

We find there is a substantial likelihood CAM I will succeed on the merits of the First Amendment challenge because the ordinance in question does not ensure that a licensing decision will be made within a reasonably brief period of time, and cannot ensure a prompt judicial decision on review. The ordinance is a prior restraint on CAM I's constitutionally-protected right of freedom of speech without the safeguards required by *Freedman*. Therefore, its enforcement will be enjoined.

Motion having been made and for the reasons set forth above, the motion of CAM I for a preliminary injunction and

418

temporary restraining order will be **GRANTED** by separate order.